NEW ENGLAND TELEPHONE AND TELEGRAPH COMPANY vs.
NATIONAL MERCHANDISING CORP. & another.

Suffolk.    December 4, 1956. — April 5, 1957.

Present: WILKINS, C.J., WILLIAMS, COUNIHAN, & CUTTER, JJ.

*Telephone Company. Unfair Competition. Unlawful Interference. Trespass. Contract, What constitutes, For telephone service. Advertising.*

The furnishing to subscribers of a telephone company by a third person of opaque plastic covers designed to fit over the subscribers' telephone directories and bearing on the outside certain telephone numbers and other information, where the use of such covers was not shown to cause interference with the company's service to the public or physical injury to the directories, did not constitute a trespass on the company's property even if it retained bare legal title to the directories. [662–664]

Provisions of the filed tariffs of a telephone company, that "equipment, instruments and lines furnished by the . . . company on the premises of a customer . . . are the property of the . . . company," and that "customers shall not use or permit to be used, in connection with the equipment or facilities furnished by the . . . company any electrical or mechanical apparatus or device . . . nor permit the attachment of any advertising devices," did not apply to the telephone directories furnished by the company to its customers nor create a contract between it and them not to use opaque plastic covers furnished to them by a third person which were designed to fit over their directories and bore on the outside certain advertising matter concerning local business concerns. [664]

A telephone company furnishing to its subscribers telephone directories containing pages of classified advertising of business subscribers and statements on the covers calling attention to those pages was not entitled to maintain, on the ground of unfair competition, a suit in equity to enjoin the defendant from distributing to the plaintiff's subscribers gratuitously by mail and not as a product of the plaintiff opaque plastic covers designed to fit over the directories and bearing on the outside classified advertising of some of the local business concerns by names, addresses, and telephone numbers. [665–673]

BILL IN EQUITY, filed in the Superior Court on March 5, 1956.

The suit was heard by *Morton*, J., who entered a final decree dismissing the bill.  The plaintiff appealed.

*Charles C. Cabot*, (*John M. Gepson & C. Duane Aldrich* with him,) for the plaintiff.

*Francis T. Leahy*, for the defendants.

CUTTER, J. The plaintiff (hereinafter called the telephone company) provides telephone service in several New England States. It furnishes, without special charge, to its subscribers telephone directories, which, in addition to an alphabetical listing of subscribers, contain (except in Boston[1]) classified advertising of business subscribers in what are usually known as the "yellow pages." In 1955, from its classified advertising the telephone company received net revenue (after deducting expenses) of $5,583,388.88. Such revenue is taken into account by regulatory commissions in fixing rates.

The defendant National Merchandising Corp. (hereinafter called National) is engaged in the business of distribution of plastic articles for the retail trade. Since June, 1955, National has distributed light weight, crimson colored, opaque plastic covers designed to fit closely over telephone directories of varying sizes. On the outside of these covers in white letters and figures are listed certain "emergency numbers" (for example, of police and fire departments) and the names, addresses, and telephone numbers of ten to twelve local business concerns, classified by occupation, as for example "auto's sales and service," "florist," "fuel oils," "hardware," "radio & television." On the back cover appears a three year calendar. A telephone directory is easily inserted in one of these covers or removed from it.

National sells to tradesmen the privilege of being listed on these covers and distributes them by mail gratuitously to telephone subscribers. A printed white slip placed inside the cover reads, "This sturdy, attractive cover will provide a ready reference for emergency and business numbers. It is presented to you with the compliments of the following companies." Then follow the names of the companies listed on the cover. Other slightly different slips have been used

---

[1] In Boston the "yellow pages" are bound separately.

in some cases. It requires no great imagination for the recipient to discover that the cover will fit his telephone directory, giving it a cheerful appearance in place of its normal drab color, as well as preventing its card cover from getting soiled and torn. The inside flaps of the covers are transparent.

Covers of various types, bearing advertising, are distributed by competitors of National. The telephone company and other concerns sell covers without advertising. Some of these are more cumbersome and less attractive than National's covers.

The telephone company formerly used the back cover of its telephone directories for paid advertising but has ceased to do so, now either leaving it blank or there inviting attention to its "yellow pages" or its own services. The front covers of its directories direct attention to the "yellow pages" and to the front pages of the directory containing service information, rates, and instructions. Occasionally instructions about service changes appear on front covers. No public authority regulates the telephone company's advertising business and it does not appear to be a part of the regulated telephone monopoly. See *McTighe* v. *New England Telephone & Telegraph Co.* 216 Fed. (2d) 26, 27, 30 (C. A. 2). See also *Solomon* v. *Public Service Commission,* 286 App. Div. (N. Y.) 636, 639–640. Compare *Baird* v. *Chesapeake & Potomac Telephone Co. of Baltimore City,* 208 Md. 245, 257–258.

Nothing in the record indicates that use of the covers physically harms the directory, causes it to wear out more rapidly, or destroys its scrap paper value. The probability is that use of the cover tends to preserve the directory, keep it clean and make it more useful and attractive in appearance.

The telephone company on March 5, 1956, brought a bill in equity against National and one Barford, its president and a large stockholder, to enjoin further distribution of the covers, alleging that their distribution "constitutes an attempt to appropriate the . . . . [telephone company's] prop-

erty in the furtherance of . . . [National's] advertising business" and that the covers cause "obscuring of the . . . [telephone company's] promotional and advertising material and a dilution of the value of the classified advertising appearing in the yellow pages" constituting unfair competition. The bill alleges further that some of the covers, by the printing of erroneous numbers and otherwise, have caused interference with the telephone company's service and that their use "constitutes a trespass upon the . . . [telephone company's] property."

After hearing on the merits, the trial judge made a report of material facts, which, in addition to finding certain of the facts already summarized, included the following miscellaneous findings, all justified by the evidence. The telephone company in its tariffs filed with the department of public utilities provides (Art. III, subpar. A) "Equipment, instruments and lines furnished by the . . . Company on the premises of a customer . . . are the property of the . . . Company," and (Art. III, subpar. D) "Customers shall not use or permit to be used, in connection with the equipment or facilities furnished by the . . . Company any electrical or mechanical apparatus or device, other than that furnished or approved by the . . . Company, nor permit the attachment of any advertising devices." The judge concluded that Article III, subparagraph A, did not refer to directories and that the directory was not "equipment or a facility to which any electrical or mechanical . . . device can be affixed." There was in the tariffs no other significant reference to directories. National "does nothing to palm off its product as that of the" telephone company "and, in fact, is particular to state to those whom it solicits" for advertising that it has no connection with the telephone company. National plans for the future that its covers will be transparent (although in the light of the conclusion we reach this does not seem of importance) and will obliterate no advertising matter of the telephone company. National makes no attempt to distribute its covers in an exchange area in which a change to dial operation is contemplated in

the near future. Apart from one instance where a subscriber decided to cancel his "yellow page" advertising, there is no evidence of either damage or benefit to the telephone company "upon which any definite finding can be made."

The trial judge concluded that "the directories are the property of the subscribers, and . . . there is no attempt" by National "to appropriate the property of" the telephone company "in promoting its advertising business, as it involves no obscuring of" the telephone company's "own promotion and advertising material, and if it results in a dilution of the classified advertising appearing in the 'yellow pages' it does not constitute unfair competition." A final decree was entered dismissing the bill with costs. The telephone company appeals. The evidence is reported.

1. The telephone company states two basic objections to National's activities: (a) that, since the parties are in competition in the field of classified telephone directories, the distribution of covers constitutes unlawful appropriation of the telephone directories by National for its business purposes; and (b) that the telephone company, responsible for its service, is entitled to enjoin "a trespass on its property which will adversely affect telephone service."

2. The evidence does not justify a finding that interference with the company's service to the public will be caused by the use of the covers. The directory is not connected with the telephone company's mechanical and electrical system. There thus is no chance of mechanical difficulty of the type considered possible in *Southwestern Bell Telephone Co.* v. *Dialite Dial Co.* 102 Fed. Sup. 872, 873 (D. C. W. D. Okla.), appeal dismissed by stipulation, sub nomine *Dialite Dial Co.* v. *Southwestern Bell Telephone Co.* 197 Fed. (2d) 523 (C. A. 10), the authority of which, in any event, is very much weakened by *Hush-A-Phone Corp.* v. *United States*, 238 Fed. (2d) 266, 268–269 (C. A. D. C.).

The evidence, closest to having relevance on this issue, is proof of three errors only (each on a separate cover among the numerous covers distributed by National) in numbers listed on National's covers, one caused by a telephone num-

ber change after the cover was published, one caused by clerical error, and one based on a mistake in transcription. These errors appear to have been corrected with promptness and energy, and there is no evidence that they caused any difficulty. It was conceded that inevitably there are errors in the telephone company's directories also. Any interference with service from this type of error is too trivial to warrant injunctive relief.

It is suggested that important service instructions are concealed by the cover. Once read, such instructions rapidly become understood and of no importance. There is no basis in the evidence for concluding that any noticeable interference with service occurs from concealing these instructions, even by an opaque cover.

3. It is unimportant that the telephone company retains title to the telephone directories, if it does. The subscriber is certainly given by the telephone company a license to use the directories on his own premises. He has sole possession of a directory while he remains a subscriber. The telephone company will replace worn out directories. At most, it reserves the right (a) to have the directory returned if telephone service is terminated and (b) to pick up old directories for scrap paper in the few cases where in recent years it has been economically sound to do so. In every practical sense, the telephone directory is a useful piece of home or office furnishing, which the telephone company is under a duty to provide to the subscriber as an essential part of its regulated monopoly service. See *McTighe* v. *New England Telephone & Telegraph Co.* 216 Fed. (2d) 26, 27 (C. A. 2); *Illinois Bell Telephone Co.* v. *Miner*, 11 Ill. App. (2d) 44, 51–54. The directory is habitually treated, and is intended to be treated, by the subscriber like any other similar expendable item of limited durability in his possession. By common custom, the customer may mark it up, make notes in or on it, and use it in any reasonable way which does not materially shorten its useful life or unreasonably depreciate its scrap paper, salvage value. Even if there has been no abandonment of bare legal title (see *Long* v. *George*, 290 Mass. 316,

322, and cases cited), the subscriber has present rights to use the directory which are sufficiently close to absolute title so that any claim of the telephone company to the injunction which it seeks must rest on principles either of contract or of unfair competition, rather than on those of trespass. Recovery or relief for trespass or injury to a chattel (as contrasted with wrongful removal or deprivation of possession) is ordinarily possible only where physical harm is shown. Restatement: Torts, §§ 218, 219, 220, comments b, f. See Harper and James, Law of Torts, § 2.3, and cases cited. Here no physical harm has been proved. Cases like *Donovan* v. *Pennsylvania Co.* 199 U. S. 279, 295, involving trespass to another's land devoted to a public use for private business purposes, are not relevant here.

4. Apart from the company's tariffs, no contract between the subscribers and the telephone company not to use covers on telephone directories has been proved. Compare *Mentzer* v. *New England Telephone & Telegraph Co.* 276 Mass. 478, 483–484; *Pollock* v. *New England Telephone & Telegraph Co.* 289 Mass. 255, 259–261. We think that the provisions of the tariffs, already quoted, do not create such a contract and do not by their terms extend to telephone directories any protection against the attachment thereto by subscribers of "advertising devices," and that, as the trial judge concluded, these provisions were intended to apply only to the actual telephone mechanical and electrical system and not to the directories. We adopt this construction the more readily because it avoids (compare *Ferguson* v. *Commissioner of Corporations & Taxation,* 316 Mass. 318, 323–324; *United States* v. *Rumely,* 345 U. S. 41, 47) serious questions of the validity of the tariff as reasonable under applicable statutes (see G. L. [Ter. Ed.] c. 159, §§ 12, 14, 16, 18, 19; c. 166, § 14) and conceivably also on constitutional grounds. Questions of reasonableness might well be presented by a tariff requirement that subscribers agree (as a condition of obtaining an essential monopolistic, regulated public service which the telephone company is bound to furnish to the public) that they will not attach National's

covers or similar covers to the directories.    Such a require-
ment could be designed only to further a private advertising
interest of the telephone company.    See *Wilkinson* v. *New
England Telephone & Telegraph Co.* 327 Mass. 132, 135–136
(which laid some stress on the fact that the regulation there
upheld "was not unreasonable"), and cases cited; *Hush-A-
Phone Corp.* v. *United States*, 238 Fed. (2d) 266, 269 (C. A.
D. C.), where a tariff regulation forbade attaching to the
telephone mouthpiece a device to prevent persons in the
same room with the instrument from overhearing conversa-
tions.    The tariff was held to be without justification and
"neither just nor reasonable."

    5. The telephone company contends that National has
engaged in unfair competition with the telephone company
(see Chafee, Unfair Competition, 53 Harv. L. Rev. 1289,
and the collection of authorities in Harper and James,
Law of Torts, § 6.13 at pages 520–523).    We, therefore,
must consider whether National's conduct in the present
case is of a type which the decisions in this field, within
the Commonwealth and elsewhere, have generally pro-
scribed.

    The usual type of case for equitable relief against unfair
competition involves something in the nature of "passing
off," that is, an attempt by one business competitior to de-
ceive the public into thinking it is buying another's products
or dealing with another.    *California Wine & Liquor Corp.* v.
*William Zakon & Sons, Inc.* 297 Mass. 373, 378–381.
*Women's Mutual Benefit Society, St. Mary of Carmen* v.
*Catholic Society Feminine of Maria, S. S. of Monte Carmelo*,
304 Mass. 349, 352.    *Silbert* v. *Kerstein*, 318 Mass. 476,
479–481.    See *Mann* v. *Parkway Motor Sales, Inc.* 324 Mass.
151, 155.    By G. L. (Ter. Ed.) c. 110, § 7A, inserted by St.
1947, c. 307, the scope of equitable relief against unfair com-
petition of this type may perhaps have been enlarged some-
what, a question we need not decide here.    See *Healer* v.
*Bloomberg Bros. Inc.* 321 Mass. 476, 477–478; *Mann* v. *Park-
way Motor Sales, Inc., supra*, at page 157; *Monroe Stationers
& Printers, Inc.* v. *Munroe Stationers, Inc.* 332 Mass. 278,

281–282;[1] compare note, 27 B. U. L. Rev. 489; compare *Triangle Publications, Inc.* v. *Rohrlich*, 167 Fed. (2d) 969 (C. C. A. 2). Even giving § 7A and the "passing off" cases the widest possible scope, they have no applicability here. There is no evidence whatsoever that National is in any way passing off its covers as a telephone company product or engaging in any deceit of the public.

The telephone company, however, asserts that it is entitled to equitable relief on the ground that National attempts to appropriate and use values created by the telephone company. In this reliance is placed on *International News Service* v. *Associated Press*, 248 U. S. 215, where (by a divided court and in the face of a persuasive, careful dissent[2] by Mr. Justice Brandeis) pirating, for use in west coast newspapers, of news, published by the efforts of Associated Press in the eastern United States, was enjoined on the ground that International was "appropriating . . . and selling . . . as its own" the work of another and thus "endeavoring to reap where it has not sown." We think the present case is distinguishable and, therefore, find no occasion to remove the doubts expressed in *Triangle Publications, Inc.* v. *New England Newspaper Publishing Co.* 46 Fed. Sup. 198, 203 (D. C. Mass.), whether the Massachusetts law[3] follows "the implications which the bar sought to

---

[1] The scope of § 7A, although not yet considered at length by this court, has been discussed in various cases in the Federal courts. We do not now pass upon the correctness of the interpretation of the statute in these cases. *Food Fair Stores, Inc.* v. *Food Fair, Inc.* 83 Fed. Sup. 445, 450 (D. C. Mass.), affirmed 177 Fed. (2d) 177, 184 (C. A. 1). *Sterling Brewing, Inc.* v. *Cold Spring Brewing Corp.* 100 Fed. Sup. 412, 416 (D. C. Mass.). *Libby, McNeill & Libby* v. *Libby,* 103 Fed. Sup. 968, 970 (D. C. Mass.). *Esquire, Inc.* v. *Esquire Slipper Manuf. Co. Inc.* 139 Fed. Sup. 228, 232 (D. C. Mass.). *Dobeckmun Co.* v. *Boston Packaging Machinery Co.* 139 Fed. Sup. 321, 324 (D. C. Mass.).

[2] Mr. Justice Holmes and Mr. Justice McKenna (at pages 246–248) would have limited equitable relief to requiring the competing news service to acknowledge Associated Press as the source of its news, thus essentially limiting relief to preventing "passing off" of Associated's news as that of its competitor.

[3] In the few instances where the *International News Service* case has been cited by this court, there has been no occasion to consider the issues of unfair competition there discussed. See, for example, *Sallinger* v. *Conrad & Co. Inc.* 242 Mass. 58, 61; *Corkum* v. *Clark,* 263 Mass. 378, 389; *Bancroft* v. *Cook,* 264 Mass. 343, 353. It is, however, worthy of mention that the Restatement,

derive from the *International News* case," or to discuss whether (despite the reference to the case in *A. L. A. Schechter Poultry Corp.* v. *United States,* 295 U. S. 495, 531–532) the *International News Service* case is limited now to its own subject of news and the particular facts there considered, as eminent authority suggests. See L. Hand, J., in *RCA Manuf. Co. Inc.* v. *Whiteman,* 114 Fed. (2d) 86, 90 (C. C. A. 2), certiorari denied 311 U. S. 712,[1] and *National Comics Publications, Inc.* v. *Fawcett Publications, Inc.* 191 Fed. (2d) 594, 603 (C. A. 2). See also *Triangle Publications, Inc.* v. *New England Newspaper Publishing Co., supra,* at page 204; Zlinkoff, Monopoly versus Competition, 53 Yale L. J. 514, 548–549; Chafee, Unfair Competition, 53 Harv. L. Rev. 1289, 1309–1315. See discussion in *Associated Press* v. *United States,* 326 U. S. 1, 7, 19, 25, 26.

In the present case, National is not selling as its own, any information or work product which the telephone company has put together. What is being supplied is a convenient, attractive, and ingenious accessory for use with telephone directories which, as part of a regulated public service, the telephone company is required to furnish to its subscribers without discrimination if they pay the prescribed rates. Although the telephone company has a protected and necessary monopoly in furnishing telephone service, that does not mean that it can prevent the use by its subscribers of accessories with its equipment and books "in ways which are privately beneficial without being publicly detrimental." Indeed, *Hush-A-Phone Corp.* v. *United States,* 238 Fed. (2d) 266, 269 (C. A. D. C.), establishes that an attempt to do so would be an "unwarranted interference with the telephone subscriber's right reasonably to use his telephone" and its related paraphernalia. In the absence of proof of substantial damage to the public interest in maintaining

apparently deliberately, did not adopt the broader principles of unfair competition announced in the *International News Service* case. See Restatement: Torts, §§ 708, 709, 715 et seq. (trade names etc.), 759, 760, 761; Chafee, Unfair Competition, 53 Harv. L. Rev. 1289, 1315–1317.

[1] Criticized on other grounds in *Capitol Records, Inc.* v. *Mercury Records Corp.* 221 Fed. (2d) 657, 662–663 (C. A. 2).

good telephone service, we think that, under the circumstances shown in the present record, providing helpful accessories of this type to the use of telephone directories is an open field for advertising ingenuity.

The telephone company also relies on certain other cases involving, for the most part, actual adoption or use by one business concern of an unregulated business mechanism or system of a competitor as a method of marketing or advertising its own product. Among cases of this type (collected in Callmann, He who Reaps where he has not Sown: Unjust Enrichment in the Law of Unfair Competition, 55 Harv. L. Rev. 595; see also Callmann, Unfair Competition and Trade Marks, §§ 8.3, 60–62; Nims, Unfair Competition and Trade-Marks [4th ed.] §§ 3, 9a, 137, 289a, 290) are: *People's Telephone & Telegraph Co.* v. *East Tennessee Telephone Co.* 103 Fed. 212 (C. C. A. 6), connection of defendant's telephone company's lines with those of plaintiff company without permission of latter held improper even though actual connection appears to have been made by subscribers; *National Telegraph News Co.* v. *Western Union Telegraph Co.* 119 Fed. 294, 300 (C. C. A. 7), where a subscriber to a ticker service was enjoined from recirculating news obtained on that service over its own ticker system; *Sperry & Hutchinson Co.* v. *Louis Weber & Co.* 161 Fed. 219, 221 (C. C. N. D. Ill.), injunction against competitor who intentionally interfered with the plaintiff's trading stamp system; *Fonotipia Ltd.* v. *Bradley,* 171 Fed. 951, 961 et seq.[1] (C. C. E. D. N. Y.), where sale of copies of the plaintiff's phonograph records was restrained; *Prest-O-Lite Co.* v. *Davis,* 209 Fed. 917 (D. C. S. D. Ohio), affirmed 215 Fed. 349 (C. C. A. 6), which held that a supplier of acetylene gas in tanks could not take advantage of a competitor's tank exchange system by selling its own gas in the competitor's tanks without real obliteration of the Prest-O-Lite name; *Searchlight Gas Co.* v. *Prest-O-Lite Co.* 215 Fed. 692 (C. C. A. 7), to much the same effect; *Meyer* v. *Hurwitz,* 5 Fed. (2d)

---

[1] Overruled in part at least in *G. Ricordi & Co.* v. *Haendler,* 194 Fed. (2d) 914, 916 (C. A. 2).

370 (D. C. E. D. Pa.), where the defendant was enjoined from selling postcards to dealers who had installed the plaintiff's vending machines designed for vending his own postcards, appeal dismissed sub nomine *Hurwitz* v. *Meyer*, 10 Fed. (2d) 1019 (C. C. A. 3); *Press Publishing Co.* v. *Levi Bros. & Co.* 3 T. M. Rep. 59 (N. Y. Supr. Ct.), holding, despite absence of "passing off," that the defendant could not properly induce news dealers to fold a sheet containing the defendant's advertising into the pages of newspapers which they were distributing. See also *Meccano, Ltd.* v. *Wagner*, 234 Fed. 912, 920 (D. C. S. D. Ohio), affirmed with irrelevant modification sub nomine *Wagner* v. *Meccano Ltd.* 246 Fed. 603 (C. C. A. 6). The authority of the *Press Publishing Co.* case may well be affected by *Germanow* v. *Standard Unbreakable Watch Crystals, Inc.* 283 N. Y. 1, 13–19 (refusing to enjoin use by the defendant there of a numbering system for watch crystals, similar to that developed by a competitor, which would enable dealers who had cabinets for the competitor's crystals to stock in them also the defendant's crystals). See also *Pocket Books, Inc.* v. *Meyers*, 292 N. Y. 58, 62.

There are several classes of cases which point in a different direction from those relied on by the telephone company; and which, by analogy at least, have some bearing in the present case: (a) those holding that unpatented parts for patented articles may be sold for use with the patented articles where there is no "passing off"; *Electric Auto-lite Co.* v. *P. & D. Manuf. Co. Inc.* 78 Fed. (2d) 700, 702 (C. C. A. 2), certiorari denied 296 U. S. 648, rehearing denied, 296 U. S. 665; Nims, Unfair Competition and Trade-Marks (4th ed.) § 138; (b) cases holding invalid under various anti-trust laws efforts to control supplies used with patented articles; *International Business Machines Corp.* v. *United States*, 298 U. S. 131, 138; *Mercoid Corp.* v. *Mid-Continent Investment Co.* 320 U. S. 661, 666 et seq.; *International Salt Co. Inc.* v. *United States*, 332 U. S. 392, 395–396; see 4 Toulmin, Anti-Trust Laws, §§ 18.1, 18.2, 18.5 et seq. (see also discussion of the problem of monopoly at

the end of this opinion); and (c) cases upholding the use of a similar system, design, or product (to that of a plaintiff) by a competitor (where there is no deceit of the public by the competitor); see *Affiliated Enterprises, Inc.* v. *Gruber,* 86 Fed. (2d) 958, 961 (C. C. A. 1); *Fashion Originators Guild of America, Inc.* v. *Federal Trade Commission,* 114 Fed. (2d) 80, 84 (C. C. A. 2), affirmed 312 U. S. 457, 468; *Official Aviation Guide Co. Inc.* v. *American Aviation Associates, Inc.* 150 Fed. (2d) 173, 178 (C. C. A. 7), certiorari denied 326 U. S. 776, rehearing denied 326 U. S. 811; *Coca-Cola Co.* v. *Snow Crest Beverages, Inc.* 162 Fed. (2d) 280, 283 (C. C. A. 1), certiorari denied 332 U. S. 809, rehearing denied 332 U. S. 832; *Chas. D. Briddell, Inc.* v. *Alglobe Trading Corp.* 194 Fed. (2d) 416, 419 (C. A. 2); *West Point Manuf. Co.* v. *Detroit Stamping Co.* 222 Fed. (2d) 581, 589 et seq. (C. A. 6), certiorari denied sub nomine *Detroit Stamping Co.* v. *West Point Manuf. Co.* 350 U. S. 840.

This court does not appear to have had occasion to consider cases like those relied on by the telephone company, not involving passing off, protection of trade name, or business reputation. The closest case appears to be *F. W. Dodge Co.* v. *Construction Information Co.* 183 Mass. 62. There this court affirmed a decree overruling a demurrer to a bill in equity, brought by a concern which collected information of interest to construction companies, against a competitor which obtained the plaintiff's reports from subscribers to them and used them to distribute to the competitor's own customers. It was held that allegations of these facts were sufficient to support equitable relief. The case has usually been interpreted as resting on principles, which have no applicability on the facts shown in the present record, of (a) protection of literary property in compilations of information not generally published (see *Baker* v. *Libbie,* 210 Mass. 599, 600–601; compare *Nikanov* v. *Simon & Schuster, Inc.* 144 Fed. Sup. 375, 379 [D. C. S. D. N. Y.]) or (b) restraining wrongful gaining possession of, or meddling with, information gathered by a competitor (*Western Union Telegraph Co.* v. *Foster,* 224 Mass. 365, 369, reversed on

ground that invalid State regulation of interstate commerce was involved, 247 U. S. 105) or (c) preventing the inducing of a breach of trust or of contract. See *Chadwick* v. *Covell,* 151 Mass. 190, 191; *Garst* v. *Charles,* 187 Mass. 144, 149–150; *Triangle Publications, Inc.* v. *New England Newspaper Publishing Co.* 46 Fed. Sup. 198, 203 (D. C. Mass.) and cases there cited. See also *Flagg Manuf. Co.* v. *Holway,* 178 Mass. 83, 90–91 (where this court refused to enjoin a zither manufacturer from making unpatented zithers which would conveniently fit the patented music of the defendant for which the defendant had built up a public demand. The court confined injunctive relief to that necessary to avoid "passing off" the plaintiff's zithers as those of the defendant); *New Method Die & Cut-Out Co. Inc.* v. *Milton Bradley Co.* 289 Mass. 277, 283–287 (where competition to the plaintiff by the manufacture and sale of toys made along similar lines was held permissible in absence of passing off); *Barett* v. *Goodwin,* 314 Mass. 279, 280–281.

All the decisions relied on by the telephone company involve definite appropriation of the distribution system or work product of a competitor, plus, in some of the cases, some elements of "passing off" or the possibility of it. Here, National distributes its covers by mail and makes no use whatsoever of the telephone company's distribution system. At the most, National gives telephone subscribers, by their own free choice, an opportunity to deprive the telephone company of a minor portion of its potential audience, who in the absence of covers would be constantly viewing, within the telephone subscriber's own house or office, the advertising and promotional display found on and in its telephone directories. We think that the general authorities do not justify the telephone company in regarding this audience as a captive audience. Compare *Public Utilities Commission of the District of Columbia* v. *Pollak,* 343 U. S. 451, 463 et seq. (where street car riders on the District transit system were held to be entitled to no protection from radio advertising broadcasts because they took the risk of such annoyance in a public conveyance, although

the court distinguishes carefully the right of such passengers to privacy in their own homes). Accordingly, the telephone company is not entitled to the relief which it seeks, which would bar National from making available its covers to telephone subscribers to use or not, as they severally see fit.

We are aware that other courts considering this problem have reached a different result. In *National Telephone Directory Co.* v. *Dawson Manuf. Co.* 214 Mo. App. 683 (St. Louis Ct. of Ap.) an injunction was issued against the placing of covers containing advertising on telephone directories (also containing advertising) furnished to a hotel subscriber with a large number of telephones. The additional covers would have obscured the advertising (and other material, if any) of the plaintiff there contained on the directory covers. The case, decided in 1924, purports to follow the *International News Service* case. Three lower court cases, two apparently unreported but reproduced in the telephone company's brief, rely heavily on the *Dawson Manuf. Co.* case [1] and on the argument that there will be interference with service, which in the present case the trial judge found and we find wholly unconvincing. *Illinois Bell Telephone Co.* v. *Miner*, 11 Ill. App. (2d) 44, arose on motion to dismiss, essentially a demurrer, which was held to admit allegations of the complaint sufficient to justify equitable relief against repeated trespasses by placing covers on telephone books, the property of the plaintiff there involved. The case may be distinguishable on this ground of the character of the allegations from the present case which has been heard on the merits and where no facts appear which would justify any such relief.

To the extent that these cases relied on by the telephone company are not distinguishable, we do not follow them. To do so would lead to an undue extension of the telephone company monopoly (see analogy of situation discussed by Rugg, C. J., in *Sallinger* v. *Conrad & Co. Inc.* 242 Mass. 58,

---

[1] *Bell Telephone Co. of Pennsylvania* v. *Rogers*, Ct. Com. Pl., Alleghany Co., Pa. May 2, 1936. *Lee Telephone Co.* v. *Walker*, Corpn. Ct., Danville, Va. February 27, 1954. *Michigan Bell Telephone Co.* v. *Wharram* (Mich. Cir. Ct. Oakland Cy.) 82 P. U. R. (N. S.) 94.

61) in an area in which the Legislature has granted it none and where the general decisions on the subject do not justify it. In considering whether in a novel area it is appropriate to grant equitable relief against alleged unfair competition, consideration must always be given to the public interest in preventing the creation or extension of monopoly.[1] See Chafee, Unfair Competition, 53 Harv. L. Rev. 1289, 1318 et seq.; Zlinkoff, Monopoly versus Competition, 53 Yale L. J. 514, 546–552. To grant relief in the present case would give the telephone company a free hand in a field from which we think existing law does not exclude ingenious competition on the facts here presented.

*Final decree affirmed with costs of appeal.*

———

[1] Compare the public interest in free dissemination of information which led to the denial of equitable relief against an alleged tort in *Krebiozen Research Foundation* v. *Beacon Press, Inc.* 334 Mass. 86, 94 et seq.