Burke, J.
This appeal, by permission of this court, involves
a review of a determination of the Public Service Commission permitting several telephone companies to amend their tariffs to include the following regulation: “ Telephone directories distributed from time to time by the Telephone Company remain the property of the Telephone Company, shall not be mutilated, and shall be surrendered upon request or upon delivery of the subsequent issue. No binder, holder, insert, auxiliary cover or attachment of any kind not furnished by the Telephone Company shall be attached to or used with the directories owned by the Telephone Company, except that this prohibition shall not apply to a subscriber-provided binder, holder, insert or auxiliary cover which contains no advertising, and which is not so attached as to impede reference to essential service information or otherwise interfere with service.”
The proposed tariff amendments, contained in the original applications of the Cazenovia Telephone Corporation and the Seneca-Gorham Telephone Corporation were couched in much broader language. On its own motion, the Public Service Commission instituted a proceeding to investigate the propriety of these proposed regulations. The telephone companies concerned, as well as petitioner, National Merchandising Corp.— appeared as parties in the proceeding. The commission concluded that some regulation was necessary and drafted the tariff set forth above, authorizing any telephone company so desiring to include it in its tariff schedules filed with the commission.
National, seeking a review of the commission’s determination in this article 78 proceeding, now appeals from an order of the Appellate Division confirming the decision.
National is engaged in promotional advertising, and distributes to telephone subscribers in a particular area a clear plastic directory cover, to which is attached a single opaque sheet containing advertisements of local merchants, together *489 with their telephone numbers, as well as several emergency numbers for the locality. It is made clear that these covers are distributed with the compliments of the local advertisers. Once delivered, National retains no control over the use to which the covers may be put by the subscribers.
The tariff, as approved by the commission, ostensibly governs the contractual relations of the telephone company and its subscribers, but its admitted purpose is to inhibit the activities of National and other firms engaged in similar enterprises.
The questions presented on this appeal involve the power of the Public Service Commission to authorize the filing of such a regulation, and its reasonableness, under the circumstances.
The repository of the commission’s regulatory authority is the Public Service Law, and the commission is powerless to exceed the authority conferred on it by that statute. (People ex rel. Public Serv. Interstate Transp. Co. v. Public Serv. Comm., 262 N. Y. 39; People ex rel. Municipal Gas Co. v. Public Serv. Comm., 224 N. Y. 156; Matter of Quinby v. Public Serv. Comm., 223 N. Y. 244.) An order of the commission “‘may be vacated as unreasonable * * * if it is beyond the power granted to the commission * * * or if there is no evidence to support it, or if, having regard to the interests of both the public and the carrier, it is so arbitrary as to be beyond the exercise of a reasonable discretion and judgment. ’ ” (People ex rel. New York & Queens Gas Co. v. McCall, 219 N. Y. 84, 88.)
Subdivision 1 of section 92 of the Public Service Law requires telephone companies to file with the commission schedules stating “ all charges and all privileges or facilities granted or allowed ”. Subdivision 2 of that section empowers the commission to hold hearings on any proposed changes in “ any general privilege or facility” to determine the propriety of the proposed change. Section 94 vests the commission with general supervisory powers over telephone lines within its jurisdiction. A telephone line is defined as apparatus used in “ the business of affording telephonic communication.” (Public Service Law, § 2, subd. 18.)
A telephone directory is, to some extent, a device used in the business of telephonic communications, and is, therefore, subject *490 to the regulatory powers of the commission. Directories provide a useful and necessary service which facilitates the use of telephones. Accordingly, ordinary alphabetical listings in both the general directory and in the classified directory are subject to the jurisdiction of the commission (Matter of Certain Subscribers v. New York Tel. Co., [1937] 1 P. S. C. 676, 20 P. U. R. [N. S.] 223). While this alphabetical listing in the directories is an essential public service, once a telephone company had discharged this duty, it is under no obligation to solicit advertisements for its directories. Indeed, the sale of advertisements for publication in the directories is not considered an essential public service. (Matter of Solomon v. Public Serv. Comm., 286 App. Div. 636; see Matter of City Ice & Fuel Co. v. Public Serv. Comm., 260 App. Div. 537.) In this regard, “ the position of a telephone company is analogous to that of a publisher of a newspaper or magazine.” (Abco Moving & Stor. Corp. v. New York Tel. Co., 193 Misc. 96.) The commission’s jurisdiction is limited to ‘ ‘ seeing to it that advertising in the classified directory is set up in a manner which does not unduly interfere with the use of the ordinary listings and that the privilege of inserting advertisements is available to all subscribers upon the same terms and conditions, without discrimination.” (Matter of Solomon v. Public Serv. Comm., supra, p. 639.)
The commission may not posit its jurisdiction upon the possible impact of these covers on advertising revenues. It is one thing to have limited jurisdiction over advertisements in the directory to see that all advertisers are treated equitably, and to insure that maximum revenues are derived from the sale of advertisements (Matter of Solomon v. Public Serv. Comm., supra); it is quite another thing to assert jurisdiction to immunize these telephone companies from competition, where the telephone companies engage in activities which do not come within the scope of an essential public service. (Cf. Matter of City Ice & Fuel Co. v. Public Serv. Comm., supra.)
Further, this attempted usurpation of power cannot be justified on the ground that the activity of National constitutes unfair competition or interference with the telephone companies ’ property rights since these matters are for the courts. (Matter of City Ice & Fuel Co. v. Public Serv. Comm., supra, p. 542.)
*491 We conclude, therefore, that the commission lacks authority to prohibit, either directly or indirectly, a lawful business enterprise from competing with the telephone companies in nonpublic service areas (New England Tel. & Tel. Co. v. National Merchandising Corp., 335 Mass. 658; Hush-A-Phone Corp. v. United States, 238 F. 2d. 266, 268, n. 9).
The telephone companies, in seeking the regulation, also maintain that these covers could interfere with telephone service. It cannot be disputed that the commission has jurisdiction over such matters, and the scope of our inquiry in this area is to determine whether there is substantial evidence to sustain the commission’s determination.
In the recent case of New England Tel. & Tel. Co. v. National Merchandising Corp. (335 Mass. 658, supra), thé highest court of Massachusetts refused injunctive relief sought by the telephone company to prevent this very same petitioner from distributing its covers in that State. Although the Massachusetts court had under consideration a general tariff provision which forbade the attachment of any device to telephone equipment except those provided by the telephone company, it did take up the charge that these covers constituted potential interference with service. The court found that the few errors in the telephone numbers listed on these covers were quickly corrected, and were too trivial to sustain a finding that they interfered with service. Similarly, the court noted (p. 663) that there was “no basis in the evidence for concluding that any noticeable interference with service occurs from concealing these instructions [found on the binders of these directories.] ”
The evidence — or rather, lack of evidence—in the hearings before the Public Service Commission substantiates the conclusions of the Massachusetts court. The Midstate Telephone Company—servicing an area in New York where these covers were distributed — did show a small loss in advertising revenues, but an officer of that company did not indicate that the use of these covers interfered with service, except for a “ feeling ” that they would. It was also brought out that as a practical matter, even without these covers on the directories, the subscribers usually ask the operator to connect them with the appropriate public agency in cases of emergencies. Indeed, the record is singularly lacking in evidence that these covers could cause interference with telephone service.
*492 We conclude then that there is no rational basis for that part of the tariff regulation which forbids the use of directory covers which contain advertising. Indeed, this type of regulation constitutes an unwarranted invasion of the home of a subscriber, who should remain free to use such covers, once in his possession, as he sees fit.
Accordingly, the order of the Appellate Division should be reversed, and the determination of the Public Service Commission authorizing the inclusion of this regulation in the tariffs filed with the commission should be vacated insofar as it forbids the use of telephone directory binders, holders, inserts, auxiliary covers or attachments containing advertisements, which are not provided by the subscriber, and which do not interfere with or impede telephone service.