In the Matter of GAMEWELL COMPANY, Petitioner, against PUBLIC SERVICE COMMISSION OF THE STATE OF NEW YORK et al., Responents.

*Third Department, June 17, 1959.*

*Whalen, McNamee, Creble & Nichols* (*Jerome Preston, Jr..* of counsel), for petitioner.

*Kent H. Brown, George H. Kenny* and *Charles R. Gibson* for Public Service Commission, respondent.

*G. Wallace Bates, Eric B. Nelson, Henry J. Friendly* and *Edward L. Friedman, Jr.,* for New York Telephone Company, respondent.

GIBSON, J.   This article 78 proceeding presents the question whether the Public Service Commission was correct in determining that respondent telephone company's business of furnishing systems for reporting of emergency alarms is properly subject to regulation.

On November 1, 1956, the telephone company filed with the Public Service Commission a tariff entitled "Private Branch Exchange Service—F. Telephone Switchboard System for Voice Reporting of Fire, Police and Other Emergency Alarms ". The system is offered for use only to municipalities and other governmental agencies. Petitioner, a business corporation manufacturing emergency alarm reporting equipment for sale or lease to its customers, protested the acceptance of the filing by a letter, treated by the commission as a complaint which it then proceeded to hear. Thus there exists the situation of a utility seeking to be regulated in a debatable area and of a company, not itself subject to regulation, protesting the imposi-

tion of that restraint upon its competitor. Despite occasional and somewhat ingenuous disclaimer, the explanation is doubtless to be found in the provisions of a consent decree in an antitrust case which, in general, enjoins American Telephone & Telegraph Company, and its subsidiaries (of which the respondent company is one) from engaging " in any business other than the furnishing of common carrier communications services "; that term including " any communications service or facility, other than message telegram service, the charges for which are or become subject to regulation under existing or future laws of any state ". (Final Judgment, *United States of America* v. *Western Elec. Co.,* United States Dist. Ct., Dist. of N. J., Civil Action No. 17–49, Jan. 24, 1956.) Neither party's motive seems important, in this case at least, and we do not consider that the Federal judgment is properly before us for any purpose.

Upon the hearing before the commission, an installation in the City of Syracuse was described in some detail as typical of the systems comprehended by the tariff. The Syracuse installation includes some 320 telephones — the standard telephone company handsets — placed in unlocked boxes on streets and in public places throughout the city, for use by policemen, firemen and other public employees, both for routine and emergency reporting, and by members of the general public for the latter purpose. These call boxes are connected by telephone lines (passing through the streets as part of the company's cable plant facilities) to a private branch exchange switchboard furnished by the telephone company but located on premises of the city and operated by city employees. The switchboard is connected by several central office trunk lines to the company's general exchange system through which, of course, any telephone subscriber may be reached; and, in addition, private tie lines provide interconnection with particular telephone stations, including those of the police department, the local power and light company, the State fire marshall and others. Accordingly, a report by voice from an outdoor telephone might be attended to at the switchboard or switched to an appropriate city department or to the telephone of any private subscriber. Thus, a policeman reporting an accident could give a report to the switchboard attendant or be connected to the police department or to a hospital or any other appropriate agency or person, and, of course, engage in a two-way conversation. Similarly, the call box telephone on the street may be called from the switchboard and the interconnected lines and from outside telephones as well.

The clear and relatively simple issue is whether the activity contemplated by the tariff offering constitutes the " business of

affording telephonic communication for hire ". (Public Service Law, § 2, subd. 17; and, for bases of definition and of regulation, see § 2, subd. 18; §§ 5, 90, 94.) The commission has concluded that it does, finding that " the service furnished is telephonic communication in the normal, common and accepted sense of the term." Neither in the record before us nor in the statute against which the proof must be analyzed do we find any basis for disturbing that considered determination. " Of course, statutory construction is the function of the courts ' but where the question is one of specific application of a broad statutory term in a proceeding in which the agency administering the statute must determine it initially, the reviewing court's function is limited ' (*Board* v. *Hearst Publications*, 322 U. S. 111, 131). The administrative determination is to be accepted by the courts ' if it has " warrant in the record " and a reasonable basis in law ' (same citation.) ' The judicial function is exhausted when there is found to be a rational basis for the conclusions approved by the administrative body ' (*Rochester Tel. Corp.* v. *U. S.*, 307 U. S. 125, 146)." (*Matter of Mounting & Finishing Co.* v. *McGoldrick*, 294 N. Y. 104, 108.)

The system provides, as the commission found, a means of communication by voice, over wires furnished by the telephone company and using the public streets. It is so joined to the company's general exchange system as to provide wide scale communication over considerable distances and, in principle at least, so as to offer access to, and permit access from, any telephone — all within the common concept of telephone service. That limitations upon the use of the service may be imposed by the municipality served or, indeed, by necessity is not of compelling importance. That the business is not that of equipment rental but of furnishing service for hire seems equally clear. The facilities and equipment are owned and controlled by the telephone company which must repair and replace them and may do so and may make changes and substitutions without consultation with the subscriber.

It is further urged in support of the determination that the system, in any event, comprises a regulable adjunct to the respondent company's utility activities, comparable to its business of publishing classified directories. (See *Matter of Solomon* v. *Public Service Comm.*, 286 App. Div. 636.) It is contended, also, that section 206 of the General Municipal Law, as to the use of telephones by policemen and firemen, " affords legislative recognition * * * [of] an appropriate telephone company function ". We do not attempt to evaluate either of these additional contentions since we prefer to rest our decision on the broad

concept of telephone service as envisaged by the statute and by common understanding as well.

The conclusion which we have reached upon the merits renders unnecessary our consideration of the question whether petitioner had standing to contest the issues before the commission and then, despite the finding that its own business is not subject to regulation, to institute this proceeding in challenge of the determination that this portion of the telephone company's business is regulable.

The determination should be confirmed, with $50 costs.

FOSTER, P. J., BERGAN, HERLIHY and REYNOLDS, JJ., concur.

Determination confirmed, with $50 costs.