In the Matter of GENERAL TELEPHONE COMPANY OF UPSTATE NEW YORK, INC., Petitioner, v PUBLIC SERVICE COMMISSION OF THE STATE OF NEW YORK, Respondent.

Third Department, July 13, 1978

## APPEARANCES OF COUNSEL

*Edward F. Skoda (A. K. Wnorowski* of counsel), for petitioner.

*Peter H. Schiff (Howard J. Read* and *John W. Dax* of counsel), for respondent.

*Herman B. Noll* for Niagara Mohawk Power Corporation, *amicus curiae.*

*Donal F. McCarthy* for Consolidated Edison, *amicus curiae.*

## OPINION OF THE COURT

STALEY, JR., J.

On March 26, 1973, by a petition for investigation, New York State Cable Television Association requested the New York State Commission on Cable Television (hereinafter referred to as CCTV) to undertake an investigation of a number of complaints pertaining to pole attachments and related agreements entered into between utility companies and Community Antennae Television Systems (hereinafter referred to as CATV). The then new commission, established in 1972 by the enactment of article 28 of the Executive Law (L 1972, ch 466), had been created as a result of a stated need for: "a state agency to develop a state telecommunications policy; to promote the rapid development of the cable television industry responsive to community and public interest and consonant with policies, regulations and statutes of the federal government". (Executive Law, § 811.)

Comments relative to the petition for investigation were filed on or before May 10, 1973 by several telephone and power utilities including petitioner herein, General Telephone Company of Upstate New York, Inc.

Upon review of the petition for investigation and responses thereto, it was decided that both the Public Service Commission and the CCTV had an interest in the subject matter and each should conduct an investigation into the practices of utilities relating to pole attachment agreements entered into with CATV companies. It was further decided that the investigations so ordered would proceed on a common record to be

heard by a single hearing examiner. The Public Service Commission's order of investigation was issued on September 7, 1973, and on September 14, 1973, the CCTV issued its order.

Petitioner and other utilities moved to dismiss the proceeding on the basis of lack of jurisdiction over the subject matter. Hearings were held from December 18, 1973 until October 8, 1975 when the record was closed. Prior to the close of the record, the hearing examiner directed the parties to file separate briefs with respect to the jurisdiction of the CCTV and the Public Service Commission over pole attachments and related agreements. Opening briefs on jurisdiction were filed on March 7, 1975, and reply briefs on April 20, 1975.

On July 21, 1976, the recommended decision of the hearing examiner was issued. It was his conclusion that neither the CCTV, nor the Public Service Commission had jurisdiction over pole attachment and related agreements entered into between utilities and operators of CATV.

On February 28, 1977, the Public Service Commission issued its opinion and order in the proceeding holding that the Public Service Commission had jurisdiction over pole attachment and related agreements. The commission ordered each electric and telephone corporation doing business in this State to file a proposed pole attachment agreement which is consistent with its opinion and order and which the utility intends to offer on a nondiscriminatory basis to all cable television operators legally entitled to do business within its service territory. It also ordered further hearings to examine into the rates which utilities should be allowed to charge for pole attachment rentals.

Petitioner and others petitioned for a rehearing, and, on August 26, 1977, the Public Service Commission issued an order which continued the prior holding of the Public Service Commission asserting jurisdiction over pole attachment agreements, and modified its prior order in certain respects not relevant to this proceeding.

The main issue in this proceeding is whether the Public Service Commission has the authority to assume jurisdiction to regulate the use of utility pole space by cable television companies.

The Public Service Law provides that the Public Service Commission's jurisdiction extends to electric plants, which by definition includes poles, and to telephone lines, which by definition includes poles, and to corporations owning, leasing

or operating the same (Public Service Law, § 5, subd 1, pars b, d; § 2, subds 12, 18). The service provided by such companies must be adequate and the rates just and reasonable (Public Service Law, §§ 65, 91). The companies may not grant any person, corporation or locality any undue preference, nor subject any person, corporation or locality to any unreasonable disadvantage (Public Service Law, § 65, subd 3; § 91, subd 3).

Subdivision 1 of section 91 of the Public Service Law provides: "1. Every telegraph corporation and every telephone corporation shall furnish and provide with respect to its business such instrumentalities and facilities as shall be adequate and in all respects just and reasonable. All charges made or demanded by any telegraph corporation or telephone corporation for any service rendered or to be rendered in connection therewith shall be just and reasonable and not more than allowed by law or by order of the commission. Every unjust or unreasonable charge made or demanded for any such service or in connection therewith or in excess of that allowed by law or by order of the commission is prohibited and declared to be unlawful."

It has been held that the Public Service Commission may exercise jurisdiction over nonservice telephone company activities, at least to a limited degree, when it considers it necessary or desirable in view of its general regulatory powers *(Matter of National Merchandising Corp. v Public Serv. Comm.,* 5 NY2d 485; *Matter of Gamewell Co. v Public Serv. Comm. of State of N. Y.,* 8 AD2d 232, mot for lv to app den 7 NY2d 706; *Matter of Solomon v Public Serv. Comm.,* 286 App Div 636).

Petitioner urges that the issue of jurisdiction of the Public Service Commission over cable television business was definitively decided in *Matter of Ceracche Tel. Corp. v Public Serv. Comm.,* 49 Misc 2d 554. In *Matter of Ceracche,* petitioner, a cable television company which had contracted for the use of certain telephone poles, sought to have the Public Service Commission assume jurisdiction to adopt tariffs and otherwise regulate pole attachments by cable television companies. The court held that the rental of the pole space by the telephone company to the cable television company was not part of the public service performed by the telephone company and that such nonutility activity of a telephone company is not subject to regulation by the commission.

Since *Matter of Ceracche* was decided, the use of utility poles for CATV attachments has mushroomed. The record shows that New York Telephone Company alone has permitted more than 500,000 attachments, which produces more than 2.5 million dollars annually in revenues. The revenues that a utility receives from renting pole space to cable television operators must be taken into account by the Public Service Commission in fixing utility rates. Pole attachment revenues are properly used to offset the utility costs that are reflected in the rates paid by utility customers.

Utility poles clearly are an essential part of the physical plant required to provide the utility service under regulation, the cost of which, must, therefore, be recovered from charges for that service. Because cable television operators use the same poles that are used to deliver essential electric and telephone service abuses by cable television operators could potentially disrupt such service. The Public Service Commission's obligation to assure that the State's citizens receive safe and adequate telephone and electric service must necessarily extend to oversight of the growing use of utility poles for CATV cables in order that this auxiliary use does not interfere with the primary purpose of utility poles, the provision of electric and telephone service.

The record in this proceeding shows that utilities have a virtual monopoly over the pole space that is often a necessity for the operation of a CATV system. A utility's relationship to cable television operators in its service area is, in many ways, analogous to its relationship to its other customers, and carries the same potential for undue discrimination and other monopoly abuses.

It is our opinion that the Public Service Commission has jurisdiction over pole attachment rates and policies in order to ensure that both cable television operators and utility customers bear reasonable shares of the costs incurred by utilities in constructing, maintaining and owning their pole facilities.

Under present day conditions, the regulation of the use of utility pole space by cable television operators is now required to assure that the rates paid by the general body of utility customers are effectively regulated, to eliminate potential discrimination against cable television operators, and to avoid potential disruption of utility service.

The determinations of the Public Service Commission that it

has jurisdiction over utility activities relating to use of pole space and charges therefor should be confirmed.

The determination should be confirmed, and the petition dismissed, with costs.

MAHONEY, P. J., SWEENEY, KANE and MIKOLL, JJ., concur.

Determination confirmed, and petition dismissed, with costs.