In the Matter of NEW YORK STATE CABLE TELEVISION ASSOCIA-
TION, Petitioner, v NEW YORK STATE PUBLIC SERVICE
COMMISSION, Respondent, and NEW YORK TELEPHONE COM-
PANY, Intervenor-Respondent.

Third Department, February 19, 1987

### APPEARANCES OF COUNSEL

*Joshua Koenig* and *Cole, Raywid & Braverman (Paul Glist* of counsel), for petitioner.

*David E. Blabey (Lawrence G. Malone* of counsel), for respondent.

*Richard H. Wagner, John M. Clarke* and *Gerald M. Oscar* for intervenor-respondent.

### OPINION OF THE COURT

CASEY, J.

This proceeding presents another aspect of a long-standing dispute concerning the regulation of rates charged by utilities for the attachment of cable television (CATV) cables to the utilities' poles *(see, Matter of Central Hudson Gas & Elec. Corp. v Public Serv. Commn.,* 108 AD2d 266; *Matter of General Tel. Co. v Public Serv. Commn.,* 63 AD2d 93; *see also,* Public Service Law § 119-a). Petitioner, as a representative of the CATV industry, contends that respondent, the Public Service Commission (PSC), erred in approving the pole attachment rates proposed by intervenor, the New York Telephone Company (NYT). In particular, petitioner objects to the inclusion of NYT's costs for anchors and guys in calculating the pole investment used in establishing the approved rates.

The general standards applicable in establishing particular pole attachment rates were set forth by the PSC in a determination issued in January 1983. In proceedings leading up to the 1983 determination, petitioner had argued that utility investment in guys and anchors should not generally be added to the rate base for poles, reasoning that since the anchors and guys were installed to offset the stresses created by particular utility lines, the costs of those anchors and guys were related to those utility lines and not to the poles. The PSC, however, rejected petitioner's argument, concluding that

utility anchors and guys should be viewed as related to the physical integrity of the pole and an integral part of the pole structure. Using this viewpoint, the PSC ruled that CATV operators benefit from this investment when they attach to utility poles and that, therefore, they should be required to bear a portion of the costs. Accordingly, in its 1983 determination, the PSC established a general rule that utility guy and anchor costs are to be included in pole investment. Petitioner did not seek judicial review of the 1983 determination and claims that it has no objection to the general rule established therein. Rather, petitioner asserts that the PSC erred in refusing to apply two exceptions carved out by the PSC when it created the general rule in 1983. The exceptions are embodied in the following language of the PSC's 1983 determination: "Where a utility has the necessary record-keeping to formulate a separate anchor charge, however, as in the case of New York Telephone, or where it can be shown that cable operators were required in the past to provide all of their own guys and anchors rather than being offered the use of spare utility guying or anchoring capacity, anchor and guy costs should be subtracted from pole investment when calculating the rate to be paid for these attachments. But considering our findings regarding the general applicability of our proposed treatment, we expect these departures to be rare."

In relying upon the second of these two exceptions, petitioner contends that the plain language quoted above establishes a distinction between utility guys and anchors and those installed by the CATV operators. Thus, according to petitioner, this exception applies whenever the utility does not have or offer the use of spare utility guying and anchoring capacity so that the CATV operator must install its own guys and anchors. It appears to us that petitioner is seeking to raise anew the argument that was rejected by the PSC when it adopted the general rule in 1983. Thus, in its 1983 determination, the PSC plainly concluded that although the added stress of attaching CATV cables to poles may require the CATV operator to install additional cables and anchors, the CATV operators nevertheless benefit from the structural integrity of the pole derived from the existing utility guys and anchors. Moreover, the interpretation of the exception advanced by petitioner would make the exception applicable more often than the general rule, despite the PSC's express provision that departures from the general rule would be rare. In rejecting petitioner's argument on this point, the PSC

explained: "And the second exception—applicable where cable operators were required to provide all their own guys and anchors (a situation we contemplated would be 'rare')—applies to very limited circumstances where the cable company anchors and guys a pole. [Petitioner's] claim that cable companies placed all the anchors and guys that they 'use' is inaccurate, for while they may have placed incremental anchors or guys (i.e., those made necessary by the cable attachment), they also derive a benefit from those anchors and guys previously attached to the pole."

■ In the circumstances herein, the PSC's interpretation and application of its prior determination is entitled to no less deference than the courts give to the PSC's interpretation or application of a statute which involves knowledge and understanding of operational practices or entails an evaluation of factual data and inferences to be drawn therefrom (see, e.g., Matter of Central Hudson Gas & Elec. Corp. v Public Serv. Commn., supra, pp 269-270). The record provides a rational basis for the PSC's determination and, therefore, our review is at an end (see, Matter of New York State Council of Retail Merchants v Public Serv. Commn., 45 NY2d 661).

Turning to the PSC's conclusion as to the applicability of the first of the exceptions quoted above, we reach a contrary result. That exception applies where a utility has the necessary record keeping to formulate a separate anchor charge, and NYT is expressly cited as an example of such a utility. In the determination under review, the PSC refused to apply this exception, stating as its rationale that NYT "has determined, and staff agrees, that administering such a charge would be unwieldly". This rationale was amplified in a footnote declaring that NYT's "determination is reasonable, for it lacks all the information necessary for establishing separate, explicit charges". Thus, in the 1983 determination, the PSC concluded that NYT was a utility which had the records necessary to formulate a separate charge, but in the determination at issue here, the PSC concluded that NYT did not have such records. In reaching a conclusion contrary to that previously arrived at, the PSC offered no reason for its departure from the prior stated course. Thus, we cannot tell whether the PSC found changed circumstances justifying a different result, concluded that its prior finding was erroneous, or simply overlooked or disregarded the prior finding.

■■ Under policy considerations embodied in administrative law, failure to conform to the prior determination, with-

out an explanation of the reasons, requires "reversal on the law as arbitrary", irrespective of whether the record contains a rational basis or substantial evidence supporting the later determination *(Matter of Field Delivery Serv. [Roberts],* 66 NY2d 516, 520). The PSC argues that any error in the rate-making process should be ignored since there is a rational basis in the record for concluding that the approved rate is just and reasonable *(see, Matter of New York Tel. Co. v Public Serv. Commn.,* 64 AD2d 232, 239, *lv denied* 46 NY2d 710). However, the PSC's determination under review herein is based expressly on its conclusions that the exceptions are inapplicable, not on a finding that the approved rate is just and reasonable. Since our review is limited to the grounds invoked by the PSC *(see, Matter of Consolidated Edison Co. v Public Serv. Commn.,* 63 NY2d 424, 441, *appeal dismissed* 470 US 1075), we reject the PSC's argument. The determination should, therefore, be modified, by annulling so much thereof as determined that the exception contained in the 1983 determination, applicable where a utility has the necessary record-keeping to formulate a separate anchor charge, does not apply to NYT, and the matter should be remitted to the PSC for further proceedings on this issue.

MAHONEY, P. J., KANE, WEISS and LEVINE, JJ., concur.

Determination modified, without costs, by annulling so much thereof as determined that the exception contained in the 1983 determination, applicable where a utility has the necessary record keeping to formulate a separate anchor charge, does not apply to New York Telephone Company; matter remitted to the Public Service Commission for further proceedings not inconsistent herewith; and, as so modified, confirmed.