In the Matter of NEW YORK TELEPHONE COMPANY, Petitioner, v PUBLIC SERVICE COMMISSION OF THE STATE OF NEW YORK, Respondent.

Third Department, December 3, 1987

**APPEARANCES OF COUNSEL**

*John M. Clarke, Cornelia McDougald* and *Michael Flynn* for petitioner.

*Robert A. Simpson (Lawrence G. Malone, Marilyn M. Faulkner* and *Kathryn C. Brown* of counsel), for respondent.

### OPINION OF THE COURT

MIKOLL, J.

Petitioner published classified directories for its customers prior to the breakup of the Bell System on January 1, 1984. Since revenues from advertisers have always far exceeded the costs of advertising space and the printing and distribution of directories, the profit or "contribution" from this business has been, and continues to be, used to subsidize, and consequently lower, petitioner's rates for basic telephone services. The rates for advertising in the directories are not subject to regulation by respondent since the rates are for advertising and not telephone services *(see, Matter of National Merchandising Corp. v Public Serv. Commn.,* 5 NY2d 485).

As the result of a study petitioner conducted prior to divestiture, petitioner concluded that competition for directory advertising, which had been relatively limited for many years, would increase significantly following divestiture and the level of profit or contribution would decrease. Petitioner therefore entered into a directory publishing agreement (DPA) with the NYNEX Information Resources Company (NYNEX-IRC), a wholly owned unregulated subsidiary of NYNEX Corporation. Under the DPA, NYNEX-IRC agreed to publish white and yellow page telephone directories in petitioner's service territory for five years, from January 1984 through December 1988. In return for the right to use petitioner's name and to contact petitioner's customers, NYNEX-IRC agreed to pay petitioner a publishing rights fee, which consisted of a guaranteed base amount plus an added amount each year based on several factors representing inflation and industry business volume.

Respondent then commenced an investigation and held hearings to determine, *inter alia,* whether the DPA was in the public interest within the meaning of Public Service Law § 110 (3). An Administrative Law Judge (ALJ) concluded that the DPA did not fall within the scope of Public Service Law § 110 (3) and that, therefore, respondent lacked jurisdiction to disapprove the DPA. Respondent subsequently rejected the ALJ's determination and upheld the conclusions of its investigative staff. Thus, respondent ruled that the DPA was a "management" contract subject to Public Service Law § 110

(3) and disapproved the DPA as contrary to the public interest. Respondent also claimed it had jurisdiction to disapprove the DPA under various other more general provisions of the Public Service Law, namely, Public Service Law §§ 92, 94, 97 and 99 (2). Respondent based its disapproval of the DPA principally on its finding that the payments received from NYNEX-IRC were unreasonably low. Petitioner's request for a rehearing was denied. Petitioner thereafter commenced this CPLR article 78 proceeding against respondent. Supreme Court transferred the proceeding to this court pursuant to CPLR 7804 (g).

The determinations should be annulled. Respondent lacked jurisdiction to disapprove the DPA. The DPA is not a "management" contract within the meaning of Public Service Law § 110 (3) as respondent argues (see, Matter of General Tel. Co. v Lundy, 17 NY2d 373).

In General Tel. Co. (supra), the utility telephone service had filed certain proposals with respondent for rate increases. The Court of Appeals noted that respondent was clearly empowered to review the operating expenses of a utility and thereby prevent unreasonable costs for materials and services from affiliated suppliers from being passed on to the ratepayers (supra, at 378). However, despite this power, respondent was not empowered by statute to regulate payments under all affiliate contracts by requiring their submission to respondent for prior approval (supra, at 378). "[I]t is only an agreement between affiliates for 'management, construction [or] engineering' services or for the 'purchase of electric energy and/or gas' which need be filed" by the utility for respondent's prior approval (supra, at 378-379, quoting Public Service Law § 110 [3], [4]). "In every other instance, [respondent] is powerless to impair the obligation or otherwise invalidate a utility's contract" (supra, at 379 [emphasis in original]). The court further noted that the Legislature has declined on several occasions to expand State regulation in this area so as to require all contracts between utilities and their affiliates be filed for prior approval by respondent (supra, at 379).

In General Tel. Co. (supra), the utility contracted with a wholly owned subsidiary directory company which compiled, printed and sold advertising for distribution in directories in the utility's service area, essentially the same service as provided in the DPA in the case at bar. The case of General Tel. Co. therefore controls the instant dispute.

Respondent's attempt to distinguish the case at bar from *General Tel. Co. (supra)* by arguing that NYNEX-IRC is performing a management service for petitioner, thereby allowing respondent to disapprove the contract under Public Service Law § 110 (3), is not persuasive. In reality, NYNEX-IRC is not selling a service to petitioner; rather, petitioner is selling an asset to NYNEX-IRC. Moreover, the DPA is not a management contract as envisioned by the statute. NYNEX-IRC is in the advertising and publishing business while petitioner is not.

Respondent's claim that the general provisions of Public Service Law §§ 92, 94, 97 and 99 (2) confer jurisdiction upon it to disapprove the DPA is also rejected. Since respondent does not have jurisdiction to disapprove the DPA under Public Service Law § 110 (3), a specific statute involving affiliate contracts, it clearly has no such power under more general provisions of the Public Service Law dealing with telephone lines, franchises and over-all rate-making powers. The repeated unsuccessful legislative attempts to broaden the scope of Public Service Law § 110 (3) *(see, Matter of General Tel. Co. v Lundy, supra,* at 379) indicate that the general provisions do not confer such authority on respondent.

We have fully considered the other contentions advanced by the respective parties.

KANE, J. P., MAIN, YESAWICH, JR., and HARVEY, JJ., concur.

Determinations annulled, with costs, and petition granted.