CABLE TELEVISION COMPANY OF ILLINOIS *et al.*, Petitioners-Appellants-Cross-Appellees, *v.* ILLINOIS COMMERCE COMMISSION *et al.*, Respondents-Appellees-Cross-Appellants.

Second District    No. 79-308

Opinion filed April 3, 1980.

Richard G. Flood, of Zukowski, Zukowski, Poper & Rogers, of Crystal Lake, for appellants.

William J. Scott, Attorney General, of Chicago (Hercules F. Bolos and Thomas J. Swabowski, Assistant Attorneys General, of counsel), for appellees.

Mr. PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

■■ In question is whether the Illinois Commerce Commission (ICC) has authority to regulate the rates, terms and conditions of "pole attachment" agreements[1] between a utility company and cable TV operators. We

---

[1] It is conceded that the quoted term includes telephone cables as well as poles.

conclude that the ICC possesses that authority and, further, that in its exercise the ICC may consider the interest of cable TV subscribers together with the interests of utility consumers.

The petitioners are 24 cable television companies (hereinafter referred to as Cable TV) which have brought an action seeking to enjoin ICC from exercising jurisdiction over pole attachment agreements entered into by petitioners and various public utilities. These companies provide cable television to communities throughout Illinois. In the operation of this business, space is leased on utility poles in order to string transmission cables. Petitioners enter into contracts with public utilities, referred to as pole attachment agreements, whereby they lease the needed space on utility owned poles. Under a recently amended Federal statute the Federal Communications Commission is given jurisdiction to regulate the conditions, terms, and rates of pole agreements; but the statute allows States to retain jurisdiction by certifying that they regulate the rates and terms of such agreements and in so doing have authority to consider and do consider the interests of cable television subscribers as well as the interests of utility consumers. 47 U.S.C.A. §224(c)(1978 Supp.).

ICC issued a resolution and certification on April 5, 1978, stating that it met the criteria specified under the Federal statute as amended. Cable TV filed a complaint for declaratory and injunctive relief on June 29, 1978, challenging the certification on the ground that ICC has no authority to regulate pole agreements or to consider the interests of cable subscribers. ICC filed a motion to dismiss on August 3, 1978, alleging the court lacked jurisdiction to entertain the suit because petitioners failed to pursue their administrative remedies under sections 65 and 68 of the Public Utilities Act. Ill. Rev. Stat. 1977, ch. 111 2/3, pars. 69, 72.

After the action for declaratory and injunctive relief was filed, Illinois Power Company, a public utility in central Illinois, was informed by respondent that before its pole agreements with American Television and Communications Corporation, a cable operator in Champaign-Urbana, could be approved, a joint petition must be filed by the utility and cable operator and a hearing held to determine the economic impact the annual rental rates would have on cable subscribers. In response to this immediate exercise of jurisdiction, a petition was filed for a preliminary injunction on August 29, requesting that ICC be enjoined from considering pole agreements by any standard not applied previous to April 5, 1978. After a hearing on September 6, 1978, the trial court denied respondent's motion to dismiss and issued the preliminary injunction.

On September 27, 1978, ICC filed an answer to the complaint alleging it had authority to regulate pole agreements and to issue the "resolution and certification"; and further arguing that section 224 of the

Communication Act of 1934 (47 U.S.C.A. 224(c)(1978 Supp.)) is unconstitutional in that it attempts to regulate activities which are entirely intrastate. Both sides moved for judgment on the pleadings after which the trial judge held that ICC has authority to regulate pole agreements under section 27 of the Public Utilities Act (Ill. Rev. Stat. 1977, ch. 111 2/3, par. 27); and in so doing has the authority to consider the interests of cable TV subscribers. He further concluded that section 224 of the Communications Act is constitutional.

In arguing that the petition should have been dismissed for failure to exhaust administrative remedies the ICC relies on section 68 of the Public Utilities Act, which provides as relevant:

> "No circuit court shall permit a party affected by any rule, regulation, order or decision of the Commission to intervene or become a party plaintiff or appellant in such court who has not taken an appeal from such rule, regulation, order or decision in the manner as herein provided." Ill. Rev. Stat. 1977, ch. 111 2/3, par. 72.

Cable TV is contesting the assertion of jurisdiction by ICC over pole attachments. An attack on administrative agencies' assertion of jurisdiction "on its face and in its entirety on the ground that it is not authorized by statute" excuses compliance with the procedures of the Administrative Review Act and with the requirement that administrative remedies must be exhausted. (*Landfill, Inc. v. Pollution Control Board* (1978), 74 Ill. 2d 541, 551.) The rule applies to proceedings under the Public Utility Act. *Getto v. City of Chicago* (1979), 77 Ill. 2d 346, 356; see also *City of Chicago v. Illinois Commerce Com.* (1979), 70 Ill. App. 3d 655, 658.

Resolution of the question raised as to the authority of the ICC to assume jurisdiction of the rates, terms, and conditions of pole attachments, requires an analysis of both Federal and State statutes. Section 224 as amended provides in relevant part as follows:

> "(c)(1) Nothing in this section shall be construed to apply to, or to give the Commission jurisdiction with respect to rates, terms, and conditions for pole attachments in any case where such matters are regulated by a State.
>
> (2) Each State which regulates the rates, terms, and conditions for pole attachments shall certify to the Commission that—
>
> > (A) it regulates such rates, terms, and conditions; and
> >
> > (B) in so regulating such rates, terms and conditions the State has the authority to consider and does consider the interests of the subscribers of cable television services, as

well as the interests of the consumers of the utility services." 47 U.S.C.A. §224(c) (1978 Supp.).

ICC argues that its authority to regulate the rates and terms of pole agreements is contained in section 27 of the Illinois Public Utilities Act (Ill. Rev. Stat. 1977, ch. 111 2/3, par. 27), which provides in relevant part as follows:

"Unless the consent and approval of the Commission is first obtained or unless such approval is waived by the Commission in accordance with the provisions of this Section:
* * *

(c) No public utility may * * * lease * * * any part of its * * * equipment * * *, but this shall not be construed to prevent the * * * lease * * * by any public utility of any tangible personal property which is not necessary or useful in the performance of its duties to the public."

Section 27 further provides for the filing of a petition with the ICC setting forth terms of the proposed agreement and states that after such hearing, "if the Commission is satisfied that such petition should reasonably be granted, and that the public will be convenienced thereby, the Commission shall make such order in the premises as it may deem proper * * *." Ill. Rev. Stat. 1977, ch. 111 2/3, par. 27(i).

■■ We construe that provision of section 27(i) of the Public Utility Act, which requires the Commission to consider "that the public will be convenienced," as embracing all considerations of public convenience including the interests of Cable TV subscribers. Similarly, other sections of the Public Utility Act do not restrict the reference to the public convenience to merely the patrons of the utility. Thus, in section 32 (Ill. Rev. Stat. 1977, ch. 111 2/3, par. 32), the utility is given the duty to provide service and facilities "as shall promote the safety, health, comfort and convenience of its patrons, employees and public * * *." Sections 38 and 41 of the Act (Ill. Rev. Stat. 1977, ch. 111 2/3, pars. 38, 41) instruct the Commission to make sure that the rates charged for services, products and commodities furnished are just, reasonable and do not disadvantage or prefer a person or class. In light of its basic duty to be fair and to protect the utility, its employees, its patrons and the general public, it is reasonable that the Commission is given jurisdiction over pole attachment rates and policies in order to insure that all persons desiring to use any part of the facilities bear reasonable shares of the costs incurred by the utilities in constructing, maintaining and owning them.

The Public Utility Act gives the ICC the authority to regulate the leasing or encumbrancing of "the whole or any part" of the utilities' property. (Ill. Rev. Stat. 1977, ch. 111 2/3, par. 27(c).) In so regulating, the Commission is required to determine whether the lease of any part of the

utilities' equipment is "not necessary or useful in the performance of its duties to the public." Ill. Rev. Stat. 1977, ch. 111 2/3, par. 27(c).

Cable TV argues that its pole attachments must of necessity use "excess" pole space, that is, space not used for service to the customers of the utility. Based on this premise it reasons that since the "excess" space is not necessary for the performance of the duties of the utility, it follows that the Commission has no jurisdiction over that space and the leasing of it for cable TV attachments.

■ However, we see no basis for "carving up" jurisdiction as to a single item of tangible personal property such as a pole for jurisdictional purposes. The Commission has been given authority to regulate, among other things, the lease or other encumbrance of "the whole or any part" of its equipment. The poles are tangible personal property which are necessary or useful to fulfill the utilities' duties and therefore considering a proposal to lease or encumber any part of them properly belongs to the Commission and requires its approval.

Authorities from jurisdictions other than Illinois which have considered similar problems are not of great value inasmuch as the statutory authority is not necessarily the same as that in Illinois. However, we view with approval the reasoning of one court which has considered the problem:

> "Utility poles clearly are an essential part of the physical plant required to provide the utility service under regulation, the cost of which, must, therefore, be recovered from charges for that service. Because cable television operators use the same poles that are used to deliver essential electric and telephone service abuses by cable television operators could potentially disrupt such service. The Public Service Commission's obligation to assure that the State's citizens receive safe and adequate telephone and electric service must necessarily extend to oversight of the growing use of utility polies for CATV cables in order that this auxiliary use does not interfere with the primary purpose of utility poles, the provision of electric and telephone service.

> The record in this proceeding shows that utilities have a virtual monopoly over the pole space that is often a necessity for the operation of a CATV system. A utility's relationship to cable television operators in its service area is, in many ways, analogous to its relationship to its other customers, and carries the same potential for undue discrimination and other monopoly abuses.

> It is our opinion that the Public Service Commission has jurisdiction over pole attachment rates and policies in order to ensure that both cable television operators and utility customers bear reasonable shares of the costs incurred by utilities in

constructing, maintaining and owning their pole facilities." *General Telephone Co. v. Public Service Com.* (1978), 63 Ill. App. Div. 2d 93, 97, 406 N.Y.S.2d 909, 912.

■ In this view of the case, we do not reach the determination of whether the Federal statute is unconstitutional as claimed by the ICC or constitutional as found by the trial court. Since we have concluded that the Commission has the power to regulate leasing activities it follows that it is under the mandate to assure that the charges are "just and reasonable" (see Ill. Rev. Stat. 1977, ch. 111 2/3, par. 32). Fulfilling that mandate necessarily entails balancing the interests of Cable TV subscribers with the other interests at stake; such balancing is all that the Federal statute can reasonably be read to require.

We therefore affirm the judgment.

Affirmed.

UNVERZAGT and VAN DEUSEN, JJ., concur.