UTAH CABLE TELEVISION OPERA-TORS ASSOCIATION, INC., Community Television of Utah, Inc., Wasatch Community Television, Inc., Utah Satellite, Inc., Plaintiffs,

v.

PUBLIC SERVICE COMMISSION OF UTAH, Milly O. Bernard, Chairman, David R. Irvine, Commissioner, Brent H. Cameron, Commissioner, Defendants.

Nos. 17794, 17813.

Supreme Court of Utah.

Sept. 30, 1982.

Bryan L. McDougal, Salt Lake City, for plaintiffs.

David L. Wilkinson, Craig R. Rich, Robert Gordon, David Lloyd, Salt Lake City, for defendants.

HALL, Chief Justice:

Plaintiffs appeal from an order of defendant Public Service Commission of Utah in which defendant certified to the Federal Communications Commission (FCC) that defendant is authorized to regulate utility pole rental contracts between utility companies and cable television companies in this state. Defendant issued this certification for the purpose of establishing Utah's jurisdiction, as against that of the FCC, over a case in which a cable television company challenged rates set by such contracts.

In 1978, Congress enacted 47 U.S.C. § 224, granting to the FCC authority to regulate rates, terms and conditions governing the attachment of cable television equipment to existing utility poles. Subsection (c) of that statute contains an exception to the FCC's jurisdiction, stated as follows:

(1) Nothing in this section shall be construed to apply to, or to give the Commission jurisdiction with respect to rates, terms, and conditions for pole attachments in any case where such matters are regulated by a State.

(2) Each State which regulates the rates, terms, and conditions for pole attachments shall certify to the Commission that—

(A) it regulates such rates, terms, and conditions; and

(B) in so regulating such rates, terms, and conditions, the State has the authority to consider and does consider the interests of the subscribers of cable television services, as well as the interests of the consumers of the utility services.

The applicability of this exception to defendant, which constitutes the sole issue to be decided on this appeal, has not been previously addressed by this Court. In *Matter of the investigation of certain license agreements entered into by Utah Power and Light Company and Mountain States Telephone and Telegraph Company with various cable TV companies,*[1] an earlier case involving the validity of cable television pole attachment contracts, defendant found that it had jurisdiction "over all contracts and license agreements between CATV companies operating in Utah and Utah Power & Light Company and Mountain Bell." However, the order published by defendant in that case does not indicate whether defendant's jurisdiction over such agreements was challenged therein or whether the effect, if any, of 47 U.S.C. § 224 on defendant's jurisdiction was discussed. No appeal from that case has been filed with this Court and it appears that defendant has otherwise exercised uncontested jurisdiction over Utah cable television pole attachment contracts until the filing of the present case.

On December 17, 1980, Wentronics, Inc., a cable television corporation, filed a complaint with the FCC's Common Carrier Bureau seeking an adjudication concerning permissible rates for cable television attachments to Utah Power & Light Company (UPL) utility poles in Moab. Wentronics alleged FCC jurisdiction over such rate determinations based on 47 U.S.C. § 224 and corresponding FCC regulations.[2] In answer, UPL denied the FCC's jurisdiction, claiming that 47 U.S.C. § 224(c) (quoted above), by excluding from FCC jurisdiction cases involving pole attachment contracts subject to state regulation, prevented the FCC from assuming jurisdiction in this case. On this basis, UPL requested a stay of the FCC proceedings in order to allow UPL to petition defendant for an order certifying its own jurisdiction under 47 U.S.C. § 224(c).

Upon the filing of UPL's petition with defendant, the latter issued the requested certification in the form of a temporary order. Defendant received objections to the proposed certification from three cable television companies, which did not include

---

**1.** Public Service Commission of Utah Case Nos. 80–049–06, 80–035–13 (Feb. 25, 1981).

**2.** See 47 C.F.R. § 1.1414.

Wentronics, and from the Utah Cable Television Operators Association, Inc. (UCTOA), plaintiffs herein. The parties submitted the case to defendant on the basis of legal memoranda and defendant then issued a permanent order affirming its own jurisdiction to regulate the rates, terms and conditions of pole attachment contracts. Defendant further certified that in so regulating, it can and does consider the interests of both cable television subscribers and utility customers, as required by the federal statute. Defendant subsequently mailed copies of its temporary and permanent orders to the FCC.

UCTOA and the cable television companies appeal from defendant's order.[3] UPL, although not a party to the appeal, received permission from this Court to file a responsive brief herein and to participate in oral arguments.

In contesting defendant's order and certification of jurisdiction, plaintiffs argue that defendant holds insufficient statutory authority over utility pole attachment contracts to meet the criteria of the 47 U.S.C. § 224(c) exception. Section 47 U.S.C. § 224(c), by its terms, applies to cases where a statute "regulates the rates, terms and conditions for pole attachments." Plaintiffs point out that no Utah statute uses the precise terminology "rates, terms and conditions" in defining defendant's authority over such contracts.

■ In enacting the statute in question, Congress recognized the "inherent power of a State" to regulate pole attachment contracts and intended to provide a forum for litigation concerning such contracts only in cases where no state forum was available.

During debate preceding the enactment of the statute, one of its proponents explained:

> First it has been said that the bill would take away the inherent power of the States to regulate CATV pole attachments. This is decidedly not the case. No State which regulates pole attachments on the effective date of this bill would lose jurisdiction. For a State which is not so regulating upon the effective date, its unexercised powers would be displaced only to the extent necessary to give cable television systems in that State a forum to take their complaints regarding unjust or unreasonable pole attachment arrangements. Should that State at any time provide that forum, the F.C.C. would drop out of the picture. Furthermore, *this bill contains no restrictions nor imposes any guidelines as to the manner by which a State may regulate* .... Thus, the inherent power of a State to regulate CATV pole attachments *in a manner of its own choosing* is preserved.[4] [Emphasis added.]

Thus, any regulation of utility pole attachment contracts by a state, regardless of the nature or specificity of such regulation, negates FCC jurisdiction over contracts in that state by providing a state forum for complaints concerning such contracts.

■ U.C.A., 1953, § 54–4–13(2), contained within the Utah Public Utilities Act, expressly governs utility pole attachment contracts, enumerating five conditions which must be met in order for a cable television company to share the easement of a public utility company.[5] One such condition is expressed as follows:

> facilities, electric power and other facilities as it may require upon, over, under and across land or upon, over, under and across a dedicated public utility strip, and such public utility has also entered into a pole attachment contract with a cable television company which has been granted a franchise by a city, county, municipal or other public authority including the right to use the wires, conduits, cables, or poles of such public utility, and providing for the attachment or installation of wires, cables, and other equip-

---

**3.** Plaintiffs filed two separate petitions with this Court for review of defendant's order, which were then consolidated at plaintiffs' request.

**4.** Cong.Rec. S967 (daily ed. July 31, 1978) (remarks of Sen. Hullings).

**5.** The complete text of U.C.A., 1953, § 54–4–13(2) reads:

> Whenever a public utility including its successors, assigns, lessees, licensees and agents, is granted a right-of-way easement to construct, operate, maintain or remove utility

The public service commission determines that under the terms and conditions of the pole attachment contract the use of the utilities facilities by the cable television company will not interfere with the primary utility function or render its facilities unsafe, and that the contract is in the public interest.[6]

Thus, U.C.A., 1953, § 54–4–13(2) gives defendant jurisdiction over every Utah pole attachment contract in order for it to determine whether the contract interferes with utility service and whether it serves the public interest. The importance of defendant's role in the governance of such contracts is shown by the fact that the statute requires a specific determination by defendant concerning the above issues as a condition to the validity of these contracts.

Other provisions of the Utah Public Utilities Act reinforce defendant's authority to regulate utility pole attachment contracts. Section 54–4–1 of that Act gives defendant jurisdiction over all aspects of the business of public utilities, declaring:

The commission is hereby vested with power and jurisdiction to supervise and regulate every public utility in this state, and to supervise *all of the business* of every such public utility in this state, and do all things, *whether herein specifically designated or in addition thereto,* which are necessary or convenient in the exercise of such power and jurisdiction. . . . [Emphasis added.]

Section 54–4–4(1) expressly grants to defendant the power to fix "rates, fares, tolls, rentals, charges, classifications, rules, regulations, practices or contracts" relating to "any service or product or commodity" of a public utility "or in connection therewith." Similarly, section 54–4–7 authorizes defendant to regulate "rules, regulations, practices, equipment, appliances, facilities, or service of any public utility" in order to ensure that they are "just, reasonable, safe, proper, adequate [and] sufficient." The above statutes demonstrate the intent of the Utah legislature to invest defendant with broad authority over public utility operations in order to protect the public interest. Section 54–4–13(2), by specifically mandating regulation by defendant of pole attachment contracts, makes it clear that this broad authority applies to those contracts insofar as they affect such public interest.

Plaintiffs in their reply brief list seven states which have refused to certify jurisdiction over pole attachment contracts as permitted by 47 U.S.C. § 224(c),[7] urging

---

ment of a cable television company, to certain poles or in certain conduits of such public utility under controlled conditions designed to ensure the continued safe operation of the utilities service and facilities without any additional burden on the grantor's property then, and in that event, the cable television company, has the right to share in and enjoy the use of the right-of-way easement, subject to the terms and conditions provided in the pole attachment contract, and the right-of-way easement or interest granted the public utility is apportionable to the cable television company under the following limitations or conditions:

(a) Consent is secured from the private property owner where the easement is located except this requirement shall not apply in the case of a dedicated public utility strip.

(b) The public service commission determines that under the terms and conditions of the pole attachment contract the use of the utilities facilities by the cable television company will not interfere with the primary utility function or render its facilities unsafe, and that the contract is in the public interest.

(c) The right-of-way easement is not restricted to the sole use of the public utility; provided, that such restriction shall not apply in any easement granted for the use of a dedicated public utility strip.

(d) The use contemplated by the cable television company is the same or similar to that granted the public utility and that such use will not impose an additional burden upon the servient tenement.

(e) The use of the easement by the cable television company will not cause irreparable injury or damage to the grantor's property.

**6.** U.C.A., 1953, § 54–4–13(2)(b).

**7.** See *Teleprompter Corp. v. Hawkins,* Fla., 384 So.2d 648 (1980); Letter from the Idaho Public Utilities Commission to the FCC (March 27, 1981), brief for plaintiffs, Appendix B; *Illinois-Indiana Cable Television Association v. Public Service Commission,* Ind.App., 427 N.E.2d 1100 (1981); Matter of the Application for a Declaratory Ruling on the Commission's Jurisdiction of the Rates, Terms and Conditions ex rel.

this Court to follow the example of those states. However, those states have not granted to their public utilities commissions express statutory authority over pole attachment contracts, as our state has. Furthermore, according to the brief filed by UPL, a total of twenty states have certified jurisdiction under the above statute. In at least two of these states, courts have upheld the jurisdiction of state commissions over such contracts on the basis of statutory authority much less specific than that granted in U.C.A., 1953, § 54–4–13(2). The New York Supreme Court, in determining such jurisdiction, reasoned as follows:

Because cable television operators use the same poles that are used to deliver essential electric and telephone service abuses by cable television operators could potentially disrupt such service. The Public Service Commission's obligation to assure that the State's citizens receive safe and adequate telephone and electric service must necessarily extend to oversight of the growing use of utility poles for CATV cables in order that this auxiliary use does not interfere with the primary purpose of utility poles, the provision of electric and telephone service.

The record in this proceeding shows that utilities have a virtual monopoly over the pole space that is often a necessity for the operation of a CATV system. A utility's relationship to cable television operators in its service area is, in many ways, analogous to its relationship to its other customers, and carries the same potential for undue discrimination and other monopoly abuses.

It is our opinion that the Public Service Commission has jurisdiction over pole attachment rates and policies in order to ensure that both cable television operators and utility customers bear reasonable shares of the costs incurred by utilities in

constructing, maintaining and owning their pole facilities.[8]

In a similar holding, an Illinois appellate court stated:

In light of its basic duty to be fair and to protect the utility, its employees, its patrons and the general public, it is reasonable that the Commission is given jurisdiction over pole attachment rates and policies in order to insure that all persons desiring to use any part of the facilities bear reasonable shares of the costs incurred by the utilities in constructing, maintaining and owning them.[9]

On the basis of the above reasoning and of defendant's express statutory authority over pole attachment contracts, defendant properly placed Utah within the group of states which have certified such authority rather than within the group listed by plaintiffs.

■  Plaintiffs assert that even if defendant has power to regulate utility pole attachment contracts, it erred in certifying to the FCC that it "has authority to consider and does consider the interests of the subscribers of cable television services, as well as the interests of the consumers of utility services." Plaintiffs allege that because of the absence in 54–4–13(2) of any express reference to cable television subscribers, defendant has no authority to consider the interests of this group and that in regulating pole attachments contracts defendant may consider only the interests of public utilities customers.

As noted previously, 54–4–13(2) specifically directs defendant, in determining the validity of pole attachment agreements, to ensure that such contracts "are in the public interest." Such consideration of the public interest necessarily involves the balancing of opposing interests held by various segments of the public, including customers

---

Public Utility Facilities by Cable Television Operators, Montana Public Service Commission Order No. 4642 (May 6, 1980); Opinion of the Attorney General of Texas No. H–1273 (December 7, 1978). Plaintiffs list Arizona and Wisconsin as the other two of the seven states.

**8.** *General Telephone Company of Upstate New York, Inc. v. Public Service Commission,* 63 App.Div.2d 93, 406 N.Y.S.2d 909 (1978).

**9.** *Cable Television Company of Illinois v. Illinois Commerce Commission,* 82 Ill.App.3d 814, 38 Ill.Dec. 199, 403 N.E.2d 287 (1980).

of both public utilities and cable television companies. The fact that defendant's responsibility under the Public Utilities Act extends beyond protecting the interests of utility customers is further shown by the following language contained within section 54–3–1 of the Act:

> Every public utility shall furnish, provide and maintain such service, instrumentalities, equipment and facilities as will promote the safety, health, comfort and convenience *of its patrons, employees and the public,* and as will be in all respects adequate, efficient, just and reasonable. [Emphasis added.]

In answer to an argument similar to that advanced by plaintiffs here, the Illinois court, in *Cable Television Company of Illinois v. Illinois Commerce Commission,* quoted above, construed its own Public Utilities Act as follows:

> We construe that provision of ... the Public Utility Act ... which requires the commission to consider "that the public will be convenienced" ... as embracing all considerations of public convenience including the interests of Cable TV subscribers. Similarly, other sections of the Public Utility Act do not restrict the reference to the public convenience to merely the patrons of the utility.[10]

This Court, in other contexts, has emphasized defendant's responsibility to consider all aspects of the public interest in regulating utility operations.[11]

Because defendant has authority to regulate the rates, terms and conditions of pole attachment contracts and to consider the interests of both cable television and utility customers in so regulating, defendant did not err in issuing its 47 U.S.C. § 224(c) certification to the FCC.

Affirmed.

STEWART, OAKS, HOWE and DURHAM, JJ., concur.

**10.** *Id.*

**11.** See, *e.g., North Salt Lake v. Saint Joseph Water & Irrigation Co.,* 118 Utah 600, 223 P.2d 577 (1950); *Union Pacific Railroad Co. v. Public Service Commission,* 103 Utah 459, 135 P.2d

915 (1943); *Utah Light & Traction Co. v. Public Service Commission,* 101 Utah 99, 118 P.2d 683 (1941); *Mulcahy v. Public Service Commission,* 101 Utah 245, 117 P.2d 298 (1941).