**KENTUCKY CATV ASSOCIATION,**
Appellant,

v.

**Marlin M. VOLZ, Katherine Randall, Dennis P. Carrigan, Members of and Constituting the Public Service Commission; General Telephone Company of Kentucky; South Central Bell Telephone Company; Kentucky Power Company; Kentucky Utilities Company; and Louisville Gas and Electric Company, Appellees.**

**LOUISVILLE GAS AND ELECTRIC COMPANY, Cross-Appellant,**

v.

**KENTUCKY CATV ASSOCIATION, INC., American Television and Communications Corporation, Consolidated TV Cable Service, Inc., and National Cable Television Association, Cross-Appellees.**

Court of Appeals of Kentucky.

Dec. 23, 1983.

Discretionary Review Denied by Supreme Court Sept. 25, 1984.

Jerry E. Abramson, John E. Selent, Greenebaum, Doll & McDonald, Louisville, Gardner F. Gillespie, Paul Glist, Hogan & Hartson, Washington, D.C., for appellant/cross-appellee, Kent. CATV.

O. Grant Bruton, Middleton & Reutlinger, Louisville, for appellee/cross-appellant, Louisville Gas and Electric Co.

Ernest W. Williams, Ogden, Robertson & Marshall, Louisville, for appellee, Ky. Utilities Co.

Creighton E. Mershon, Stephen M. Vinsavich, Louisville, Thomas W. Moore, Birmingham, Ala., for appellee, South Central Bell.

E. Gaines Davis, Jr., Frankfort, for appellee, Kentucky Power Co.

William M. Sawyer, Paul M. Cupp, Frankfort, for appellee, Public Service Commission.

John Hopkins, Hazelrigg & Cox, Frankfort, Wayne Goodrum, Lexington, for General Telephone Company.

James Brannen, Asst. Atty. Gen., Frankfort, for Division of Consumer Intervention.

Before COOPER, HOGGE and HOWERTON, JJ.

HOWERTON, Judge.

Kentucky CATV Association appeals from a judgment of the Franklin Circuit Court affirming a ruling by the Kentucky Public Service Commission that the Commission has jurisdiction under Kentucky and federal law to regulate pole attachment agreements between cable television operators and the various utility companies which are subject to the jurisdiction of the Commission. American Television and Communications Corporation, Consolidated TV Cable Service, Inc., and National Cable Television Association attempted to appeal but failed to properly file their appeals. Kentucky CATV argues that the Commission has no authority to regulate cable television pole agreements because the Commission has only limited jurisdiction which does not include regulation of private contracts between a cable television operator and a utility. CATV also argues that the Commission cannot satisfy the conditions imposed by the Federal Pole Attachment Act and that such regulation must be accomplished by the Federal Communications Commission.

Louisville Gas and Electric Company has filed a cross-appeal arguing that the brief by Kentucky CATV should be stricken and that CATV has no standing to be involved in this action. Separate motions were also filed to strike the brief of CATV, but the decision was passed to this panel. A motion was also passed to this panel requesting that attorney fees be paid by CATV.

■ We have considered the motions and the allegations by the cross-appellant; and, although CATV's brief is no gem of perfection, the motions to strike the brief and for an award of attorney fees are denied. CATV was a party before the Commission and the trial court, and we will not refuse it standing at this time. Furthermore, we are affirming the decision of the trial court, and the issues raised by the cross-appellant are moot. We find no error in the ruling by the Commission, and we generally adopt it as the opinion of this Court.

On February 21, 1978, the Congress of the United States adopted Public Law 95–234 which added § 224 to Title 47 of the United States Code. The title of the section is "Pole Attachments." Subsection (a) defines such terms as "utility" and "pole attachment." Subsection (b) permits the Federal Communications Commission to "regulate the rates, terms, and conditions for pole attachments . . . ." Subsection (c) then provides as follows:

(1) Nothing in this section shall be construed to apply to, or to give the Commission jurisdiction with respect to rates, terms, and conditions for pole attachments in any case where such matters are regulated by a State.

(2) Each State which regulates the rates, terms, and conditions for pole attachments shall certify to the Commission that—

(A) it regulates such rates, terms, and conditions; and

(B) in so regulating such rates, terms, and conditions, the State has the authority to consider and does consider the interests of the subscribers of cable television services, as well as the interests of the consumers of the utility services.

On November 20, 1980, General Telephone Company of Kentucky and South Central Bell Telephone Company filed with the Public Service Commission a petition requesting the Commission to assert that it has jurisdiction to regulate the rates, terms, and conditions applicable to the provision of pole attachment space to cable television system operators. The petition also requested that the Commission certify to the Federal Communications Commission that it does assume such jurisdiction. Kentucky Utilities and Louisville Gas and Electric subsequently filed similar petitions. The petitions were consolidated and proceedings were begun on April 21, 1981. Kentucky Power Company intervened on behalf of the petitioners, and American Television and Communications Corporation, Consolidated Cable Television Services, Inc., Kentucky CATV Association, National Cable Television Association, Inc., and the Kentucky Attorney General intervened in opposition to the petitions.

There are numerous cable television systems operating in Kentucky. The cables linking the subscribers with television programming are almost always attached to existing utility poles. This is done for convenience, economy, and aesthetic reasons. The terms, conditions, and rates for the use of such pole space have been the subject of private negotiation and agreement between a utility and a cable TV company. Prior to this action, no attempt was made to invoke any supervisory jurisdiction over the arrangements between the parties.

CATV argues that a pole attachment arrangement is not within the statutory scheme of regulating utility rates and services. It also argues that cable systems and pole attachment agreements have existed for many years, during which time the Commission has had no jurisdiction over the subject. It contends that without further statutory changes in Kentucky, the Commission has no jurisdiction. CATV relies heavily on *Benzinger v. Union Light, Heat & Power Co.*, 293 Ky. 747, 170 S.W.2d

38 (1943), which upheld the police power of a city to require utility wires to be buried. The language in the opinion put a somewhat restrictive interpretation on the statutory power of the Commission to regulate the service of a utility. We conclude, however, that the Commission does have statutory jurisdiction, that its failure to exercise such jurisdiction during the previous 25 to 30 years does not bar it from accepting jurisdiction at this time, and we find *Benzinger* to be distinguishable from this situation.

■ Poles are an essential part of the facilities of most regulated utilities. The amount paid for the use of space on the poles is a "... charge, rental or other compensation for service rendered ...." KRS 278.010(10). The Commission has a statutory duty to determine whether rates are just and reasonable. KRS 278.190(3). Revenue from pole attachment agreements is a part of the income of the regulated utilities, and it is a natural activity for the Commission to consider these pole rental rates when it considers the overall fairness of rates and services for the consumers.

The Public Service Commission has exclusive jurisdiction over the rates and services of the regulated utilities in this State. KRS 278.040. We must agree with the finding by the Commission that the rates charged for pole attachments are "rates" within the meaning of KRS 278.040, and that the pole attachment itself is a "service" within the meaning of the statute.

KRS 278.010(10) defines "rate" to mean: [A]ny individual or joint fare, toll, charge, rental or other compensation for service rendered or to be rendered by any utility, and any rule, regulation, practice, act, requirement or privilege in any way relating to such fare, toll, charge, rental or other compensation, and any schedule or tariff or part of a schedule or tariff thereof[.]

The definition is quite comprehensive, but the definition of "service" is even broader. KRS 278.010(11) reads:

"Service" includes any practice or requirement in any way relating to the service of any utility, including the voltage of electricity, the heat units and pressure of gas, the purity, pressure and quantity of water, and in general the quality, quantity and pressure of any commodity or product used or to be used for or in connection with the business of any utility[.]

Although cable television was not contemplated at the time the statutes were originally enacted, the utilities are clearly providing a "service" to cable TV when they allow CATV operators to attach their cables to unused space on an existing utility pole. The term "service" not only includes the basic services for which a utility is created, but it also includes any service which arises from the use of a utility's facilities, such as its poles. Such use provides additional revenue to the utility which must be considered in determining the "rates" it charges its customers for its basic utility services.

In *Benzinger, supra*, the court did attempt to distinguish between "essential utility functions" and "other functions." However, the distinction is not only dictum, it has no application in this case. *Benzinger* involved a city's "police power" to require a utility to put its operating lines underground. If a municipality has the authority to require utilities to go underground, the cable TV lines would also go underground; but there is no issue of "police power" in this case.

The Commission has jurisdiction over the utility companies, and that jurisdiction extends to their poles and the "services" and "rates" generated by pole attachment agreements. Furthermore, KRS 278.260 empowers the Commission to investigate any "... practice or act affecting or relating to the service of the utility or any service in connection therewith" which may be "unreasonable, unsafe, insufficient or unjustly discriminatory ...." We can only conclude that the statutory scheme confers broad jurisdiction over the use of the "facilities" of all utilities.

The fact that the Commission has never before sought regulation of cable television pole agreements in no way prohibits its assumption of jurisdiction at this time. Its powers are broad enough to provide for it, and the General Assembly can now limit them, confirm them, or broaden them as it sees fit.

Safety is certainly a factor in the use of additional pole space. The Commission has jurisdiction to require agreements and practices which provide for safety in the use and maintenance of the utility poles. The fact that no serious safety questions or other problems have arisen to date merely speaks well of the existing agreements and uses of facilities which the utilities and cable television operators have had in the past.

Finally, we find no merit in CATV's argument that the Commission cannot satisfy the conditions imposed by the federal regulations. We have already concluded that the Kentucky statutes authorize the Public Service Commission to exercise jurisdiction over pole attachment agreements with utilities in Kentucky. The Public Service Commission is the natural state agency to consider the interests of cable television subscribers as well as the interests of the consumers of various utility services. The Commission has accepted that task. It seems especially appropriate to utilize the Commission in the matter of pole attachment agreements, because it is this joint use of the utility's facility which may bring the two parties and their customers into conflict. The Illinois regulatory commission was held to meet the federal criteria for considering the interests of cable television subscribers in *Cable Television Co. of Illinois v. Illinois Commerce Commission*, 82 Ill.App.3d 814, 38 Ill.Dec. 199, 403 N.E.2d 287 (1980). An appropriate statement in the opinion reads 38 Ill.Dec. at 202, 403 N.E.2d at 290:

> Since we have concluded that the Commission has the power to regulate leasing activities it follows that it is under the mandate to assure that the charges are "just and reasonable." Fulfilling

that mandate necessarily entails balancing the interests of Cable TV subscribers with the other interests at stake; such balancing is all that the federal statute can reasonably be read to require.

The judgment of the Franklin Circuit Court is affirmed on both the appeal and the cross-appeal.

All concur.