LOTTINGER, Judge.
In this appeal, we are asked whether the Louisiana Public Service Commission has the authority to regulate the rates, terms, and conditions of “pole attachment” agreements between utility companies and cable television operators.
Appellants are cable television operators who provide cable television services to individual subscribers by transmitting television images over coaxial cables. For convenience, economic and aesthetic reasons, the cables linking the operators with the subscribers are almost always attached to existing utility poles. To accomplish this, cable companies enter into contracts with public utilities whereby they lease surplus pole space from the utilities for the attachment of their cables. These contracts are generally known as “pole attachment” agreements.
By virtue of a federal statute, the Federal Communications Commission (FCC) is given jurisdiction to regulate the terms, conditions and rates of pole attachment agreements. 47 U.S.C.A. § 224. However, the statute allows states to regulate such agreements by certifying to the FCC that they regulate the rates and terms of such agreements, and in doing so, they have the authority to consider, and do consider the interests of cable television subscribers, as well as utility customers. 47 U.S.C.A. § 224(c). Pursuant to this authority, the FCC enacted a formula for calculating appropriate pole attachment rates.
By letters dated June 6 and August 25, 1978, the Louisiana Public Service Commission (Commission) purported to certify to the FCC its authority to regulate pole attachment agreements. In 1980, the Commission adopted its own formula for calculating pole attachment rates, which resulted in substantially higher rates than under the FCC formula. As a result of the increase, a number of cable companies filed the present suit, questioning the authority of the Commission, under Louisiana law, to regulate pole attachment agreements. The suit was originally filed against the Commission. Louisiana Power and Light, South Central Bell Telephone Company and Gulf States Utilities intervened to protect their interests as public utilities. The trial court granted a summary judgment in favor of the Commission and the intervenors. The cable companies perfected the present appeal contending that the Commission has no jurisdiction over cable companies and that the authority of the Commission to regulate public utilities does not include the *718 authority to regulate pole attachment agreements.
It is not contended by the Commission and intervenors that the Commission has jurisdiction over cable television companies. The jurisdiction of the Commission is limited to the regulation of common carriers and public utilities. La.Const. Art. 4 § 21; La.R.S. 45:1161 et seq. Although there is no exact definition of what constitutes a “public utility”, cable companies lack the inherent characteristics possessed by public utilities. See: Morehouse Natural Gas Co. v. Louisiana Public Service Commission, 242 La. 945, 140 So.2d 646 (1962); 73B C.J.S. Public Utilities § 2. Therefore, it is clear that the Commission has no jurisdiction to regulate cable television companies.
The issue of whether the Commission’s authority to regulate public utilities encompasses the authority to regulate pole attachment agreements necessarily requires an analysis of both federal and state law.
47 U.S.C.A. § 224(c) (1978), as amended, provides, in pertinent part, as follows:
(1) Nothing in this section shall be construed to apply to, or to give the Commission jurisdiction with respect to rates, terms, and conditions for pole attachments in any case where such matters are regulated by a State.
(2) Each State which regulates the rates, terms, and conditions for pole attachments shall certify to the Commission that
(A) it regulates such rates, terms, and conditions; and
(B) in so regulating such rates, terms, and conditions, the State has the authority to consider and does consider the interests of the subscribers of cable television services, as well as the interests of the consumers of the utility services.
Louisiana law provides no express authority to the Commission to regulate the rates and terms of pole attachment agreements. However, the Commission and in-tervenors argue that the Commission’s authority is implied from its general authority to regulate public utilities, as provided in the Louisiana Constitution and various revised statutes.
The Louisiana Constitution establishes the Commission and defines its powers and duties as follows:
The Commission shall regulate all common carriers and public utilities and have such other regulatory authority as provided by law. It shall adopt and enforce reasonable rules, regulations, and procedures necessary for the discharge of its duties, and shall have other powers and perform other duties as provided by law. La.Const. Art. 4 § 21(B).
This grant of authority is very broad and as it is derived from the constitution, the Louisiana legislature is precluded from restricting or otherwise limiting it. Louisiana Consumers’ League, Inc. v. Louisiana Public Service Commission, 351 So.2d 128 (La.1977). However, the Commission’s authority is not unbridled. Rather, it is limited to the law of its creation, and it possesses no other powers than conferred in express terms or by necessary implication. South Central Bell Telephone Company v. Louisiana Public Service Commission, 412 So.2d 1069 (La.1982).
Pursuant to the provision of the constitution allowing the Commission any other authority provided by law, the Louisiana legislature has expanded or attempted to define the powers of the Commission. La. R.S. 45:1161 et seq.
The following statutes are asserted as establishing implicit authority to regulate these agreements:
La.R.S. 45:1163A. The Commission shall exercise all necessary power and authority over any ... [public utility] for the purpose of fixing and regulating the rates charged or to be charged by and service furnished by such public utilities

La.R.S. 45:1164A. The power, authority, and duties of the commission shall affect and include all matters and things connected with, concerning, and growing out *719 of the service to be given or rendered by such public utility, except in the parish of Orleans.
Appellant cable companies contend that “service” rendered and furnished by public utilities as contemplated by La.R.S. 45:1163 and 1164 is limited to the actual service provided, i.e. electricity, telephone, etc., and private agreements such as the leasing of surplus pole space has nothing to do with such service, and should not fall under the jurisdiction of the Commission.
On the other hand, the Commission and intervenors contend that pole attachment agreements are related to and “grow out” of the utilities’ service so that the agreements are within the authority of the Commission under La.R.S. 45:1163 and 1164. Furthermore, it is asserted that pole attachment agreements affect an essential part of the utilities’ facilities, i.e. poles, and for reasons of safety and uninterrupted service, the agreements should be within the jurisdiction of the Commission. As authority, we are cited a number of cases from other jurisdictions. For reasons which will be assigned later, these cases are not controlling and are distinguishable from the present case.
“Service,” as used in the above mentioned statutes has not been defined by our legislature. However, as used in the statutes, the service is that rendered or furnished by the utility. What is furnished by the utility is electricity, telephone service, etc., whatever the case may be. This service has nothing to do with cable television companies or systems. Neither can it be said that pole attachment agreements are connected with the service furnished by utilities. These agreements pertain to surplus pole space not used by the particular utility, and are not related, directly or indirectly, to the production and delivery of the services for which the utilities were created to supply. This is true even though, as the Commission and intervenors point out, the poles are essential to the utilities’ service, because the area of the poles leased to the cable companies is surplus space and not used or contemplated to be used by the utility. Although safety and the need for uninterrupted service has been urged as a basis for jurisdiction, it has not been established that any particular practice, act or service employed by cable companies is unsafe or would potentially interrupt the service provided by utilities nor that the Commission proved that safety was a criteria used in developing the rate formula approved.
The Commission and intervenors rely on a number of cases from other states which upheld the authority of agencies of other states to regulate pole attachment agreements.
However, in all of the cases relied on, the courts’ decisions were based on state statutes which, when analyzed and interpreted, provided the various state agencies or commissions with jurisdiction over pole attachment agreements. In Utah Cable Television Operators Association, Inc. v. Public Service Commission of Utah, 656 P.2d 398 (Utah 1982) the court found that the Utah Public Service Commission had jurisdiction based on a state statute contained in the Utah Public Utilities Act which conditioned pole attachment agreements on, among other things, determinations by the Utah Public Service Commission that, under the terms of the agreement, the use of the poles by the cable company would not interfere with the services of the utility company. No such statute exists in Louisiana, and jurisdiction under such a statute is clear.
In Kentucky CATV Association v. Volz, 675 S.W.2d 393 (Ky.Ct.App.1983) the court relied on state statutes which included, among other things, very broad definitions of “rates” and “services” over which the commission had jurisdiction. The definitions were broad enough to be expanded to include any service which arises from the use of a utility’s facilities, such as its poles. “Services” was specifically defined and not limited to the essential services provided by the various utilities. As established above, “service” is not defined in Louisiana law, and not subject to such an expansive definition.
*720 In General Telephone Company of Upstate New York, Inc. v. Public Service Commission, 63 App.Div.2d 93, 406 N.Y.S.2d 909 (1978) the court relied on state statutes which provided jurisdiction in the Public Service Commission of New York over electricity and telephone plants, which by definition included poles, as well as to corporations owning, leasing or operating the same. Thus, the lease of the pole space was included. In addition, this case arose before the effective date of 47 USCA § 224. No such statute or grant of authority can be found in Louisiana law.
In Cable Television Company of Illinois v. Illinois Commerce Commission, 82 Ill.App.3d 814, 38 Ill.Dec. 199, 403 N.E.2d 287 (1980) the statute relied on by the court allowed the state public service commission to regulate the leasing or encumbering of the whole or any part of the property of the utility, which the court interpreted as including poles or any part thereof. In Louisiana, no such authority is granted unless the lease or encumberance affects a matter connected with the service rendered by the utility, which pole attachment agreements, as concluded above, do not.
As can be seen, the cases from other jurisdictions were based on state statutes which reasonably and logically could be extended to include pole attachment agreements. No such statutes exist in Louisiana.
The Commission and intervenors also rely on La.R.S. 45:1176 which authorizes the Commission to investigate the reasonableness of all contracts entered into by public utilities with others. However, the Commission and intervenors read a portion of the statute out of context of the entire statute, which provides as follows:
The Commission and any parochial or municipal body having similar powers in the fixing of just and reasonable rates charged or to be charged by public utilities, shall investigate the reasonableness and justness of all contracts, agreements and charges entered into or paid by such public utilities with or to other persons, whether affiliated with such public utilities or not, and shall have the power to disallow as an operating expense of any public utility such part of the amount so paid by it under any such contract or agreement as the Commission or parochial or municipal body may find, after hearing, to be unjust or unreasonable and designed for the purpose of concealing, abstracting or dissipating the net earnings of the public utility.
As can be seen, this statute provides authority for the Commission to investigate all contracts entered into by public utilities, including pole attachment agreements. However, such investigation is not to regulate the terms of the agreement, but is to be done after the contract is. entered into by the parties, and for the purpose of insuring that such utilities are not paying unjust or unreasonable fees under the contract. If the Commission finds that a contract results in an unjust or unreasonable charge paid by a utility, it has the power to disallow the charge as an operating expense after holding a hearing and making certain conclusions. The statute is aimed at preventing the concealment of the utilities’ earnings from the Commission, and not a grant of power to regulate the terms of all contracts entered into by a public utility. The statute itself envisions contracts which are unfavorable to the Commission, which would not be the case if the Commission could regulate the terms of the contract. In addition, nothing in the statute authorizes the regulation of rates and terms of contracts prior to the time the parties enter into such contract. The statute addresses itself to the Commission’s authority regarding contracts after they are perfected.
Since the powers and duties of the Commission first appeared in the 1921 Louisiana Constitution, and the relevant provisions of the 1974 Constitution were not intended to change such authority, South Central Bell Telephone Company v. Louisiana Public Service Commission, supra, it is clear that pole attachment agreements were not considered in defining the powers of the Commission. As previously men *721 tioned, the legislature has the authority to define and expand the powers of the Commission. We are of the opinion that the constitution does not convey authority to the Commission to regulate these ancillary agreements which are not related to the function of the utility. In addition, the statutes enacted by the legislature do not establish any intent by the legislature to expand the Commission’s jurisdiction to these agreements. It is up to the legislature, not the judiciary, to do so.
Because of these conclusions, we need not address appellant’s remaining alleged errors.
Intervenors contend that inasmuch as the trial court ruled in favor of the Commission on substantive grounds, it did not consider the requirement that appellants exhaust their administrative remedies before the Commission. We conclude that inasmuch as the issue is one of jurisdiction which depends on an interpretation of the constitution and statutes, the proper forum is the court system.
On the morning of oral arguments, South Central Bell filed with this court a peremptory exception raising the objection of no cause of action, alleging that the basis of appellants’ petition, 47 U.S.C.A. § 224, was recently declared unconstitutional by the United States 11th Circuit Court of Appeals. In Florida Power Corporation v. Federal Communications Commission, 772 F.2d 1537 (C.A.11 1985), the court held that an order by the FCC regarding pole attachment rates, as well as 47 U.S.C.A. § 224, constituted an unconstitutional taking of the utilities’ property. The basis of the decision was that the statute authorized an administrative determination of “just compensation”, a power traditionally a function for the judiciary. However, we must note that this case is not final.
In any event, the petition in the current case is not an action under 47 U.S.C.A. § 224, but is based on a challenge to the authority of the Louisiana Public Service Commission under its powers as delineated by the Louisiana Constitution and various statutes. While 47 U.S.C.A. § 224 may be relevant to the resolution of this case, it certainly is not the basis of the current action. Therefore, the exception is denied.
For the above and foregoing reasons, the judgment of the trial court is reversed and remanded for further proceedings not inconsistent with this opinion. Costs of this appeal are assessed to the defendant-appel-lee, Commission, in the amount of $1,196.82.
REVERSED AND REMANDED.