493 So.2d 555 (1986)
LOUISIANA CABLEVISION, et al.
v.
LOUISIANA PUBLIC SERVICE COMMISSION.
No. 86-C-0375.
Supreme Court of Louisiana.
September 8, 1986.
Rehearing Denied October 16, 1986.
Marshall Brinkley, Baton Rouge, Attorney at Law, for applicant.
Ashton Hardy, James Popham, Fawer, Brian, Hardy & Zatzkis, New Orleans, Victor Sachse, III, Robert Atkinson, Breazeale, Sachse & Wilson, Baton Rouge, Maurice Naquin, Jr., Attorney at Law, Andrew Carter, Eugene Taggart, Wayne Anderson, Monroe & Lemann, New Orleans, James L. Ellis, Taylor, Porter, Brooks & Phillips, Baton Rouge, for respondent.
MARCUS, Justice.[*]
Louisiana Cablevision, Callais Cablevision, Inc., LaFourche Communications, Inc. and Total CATV, Inc. are cable television operators who provide cable television services to individual subscribers by transmitting television images over coaxial cables. For economic as well as aesthetic reasons, the cables linking the operators with the subscribers are usually attached to existing utility poles, most of which are owned by telephone or electric power companies. The cable operators enter into contracts, referred to as pole attachment agreements, with the public utilities, whereby the cable operators receive the right to use the needed space on utility poles.[1] Under federal law, the Federal Communications Commission (FCC) is given jurisdiction to regulate the rates, terms and conditions of pole attachment agreements; however, states *556 may preempt the FCC's authority by certifying to the FCC that they regulate the rates, terms and conditions for pole attachments, and in so doing have the authority to consider and do consider the interests of cable television subscribers, as well as the interests of utility consumers. 47 U.S.C.A. § 224(b)-(c) (West Supp.1986).
By letters dated June 6 and August 25, 1978, the Louisiana Public Service Commission (Commission) certified to the FCC its authority to regulate pole attachment agreements. In 1980, the Commission adopted its own formula for calculating pole attachment rates.[2] The Commission's formula results in substantially higher rates than the FCC's formula.[3]
A number of cable television operators filed a petition for declaratory judgment and permanent injunction against the Commission, questioning the authority of the Commission, under Louisiana law, to regulate pole attachment agreements. Louisiana Power and Light Company, South Central Bell Telephone Company, Gulf States Utilities Company and Southwestern Electric Power Company intervened uniting with the Commission in resisting the cable television operators' demands. The cable television operators filed a "Motion for Partial Summary Judgment." The Commission filed a "Cross-Motion for Partial Summary Judgment." Also, intervenors, Louisiana Power and Light Company and South Central Bell Company, each filed a "Motion for Partial Summary Judgment." After a hearing, the trial court denied the cable television operators' motion and granted a partial summary judgment in favor of the Commission and the intervenors, dismissing the operators' suit insofar as it attacked the validity of the Commission's certification to the FCC that it may legally set the rates for cable television pole attachments belonging to investor-owned public utilities. The court of appeal reversed,[4] finding that neither the Louisiana Constitution nor the statutes of this state establish any intent by the legislature to include pole attachment agreements within the jurisdiction of the Commission.[5] Upon application of the Commission, we granted certiorari to review the correctness of that decision.[6]
The issues presented for our consideration are whether, under Louisiana law, the Commission has the authority to regulate the rates, terms and conditions of pole attachment agreements between cable television operators and Commission-regulated public utilities, and, if so, whether in so doing, the Commission has the authority to consider and does consider the interests of the subscribers of cable television services, as well as the interests of the consumers of the utility services.
Resolution of both issues requires an analysis of federal as well as state law. *557 47 U.S.C.A. § 224(c) provides in pertinent part:
(1) Nothing in this section shall be construed to apply to, or to give the Commission [FCC] jurisdiction with respect to rates, terms, and conditions for pole attachments in any case where such matters are regulated by a State.
(2) Each State which regulates the rates, terms, and conditions for pole attachments shall certify to the Commission that
(A) it regulates such rates, terms, and conditions; and
(B) in so regulating such rates, terms, and conditions, the State has the authority to consider and does consider the interests of the subscribers of cable television services, as well as the interests of the consumers of the utility services.[[7]]
The clear congressional intent of this statute was that the states, not the federal government, should have the main responsibility for regulation of pole attachments:
The [Senate] committee considers the matter of CATV pole attachments to be essentially local in nature, and that the various State and local regulatory bodies which regulate other practices of telephone and electric utilities are better equipped to regulate CATV pole attachments. Regulation should be vested with those persons or agencies most familiar with the local environment within which utilities and cable television systems operate.
S.Rep. No. 580, 95th Cong., 2d Sess. 16 reprinted in 1978 U.S.Code Cong. & Ad. News 109, 124. See also Las Cruces TV Cable v. New Mexico Corp. Comm'n, 102 N.M. 720, 699 P.2d 1072 (1985).
Louisiana law provides no express authority to the Commission to regulate the rates, terms, and conditions of pole attachment agreements. The Commission, however, is given broad regulatory powers in both the Louisiana Constitution and statutes. The Louisiana Constitution establishes the Commission and defines its powers as follows:
The commission shall regulate all common carriers and public utilities and have such other regulatory authority as provided by law. It shall adopt and enforce reasonable rules, regulations and procedures necessary for the discharge of its duties, and shall have other powers and perform other duties as provided by law.
La.Const. art. 4, § 21(B). Pursuant to this provision of the Constitution, the legislature has further defined the powers of the Commission.
La.R.S. 45:1163(A) provides in pertinent part:
The commission shall exercise all necessary power and authority over any ... [public utility] for the purpose of fixing and regulating the rates charged or to be charged by and service furnished by such public utilities....
La.R.S. 45:1164(A) provides in pertinent part:
The power, authority, and duties of the commission shall affect and include all matters and things connected with, concerning, and growing out of the service to be given or rendered by such public utility....
*558 "Service," as used in the above statutes, has not been defined by the legislature. As used in these statutes, however, "service" refers to the purpose for which the utility is engaged. For example, the service of an electric utility is the production, transmission and delivery of electricity, and the service of a telephone company is the provision of telephonic communications systems. Therefore, we must determine whether pole attachment agreements are connected with, concern and grow out of these services rendered by utilities regulated by the Commission.
Utility poles clearly are an essential part of providing utility service. Because cable television operators use the same poles that are used to deliver electric and telephone service, abuses by cable television operators potentially could disrupt such service. Also, safety is certainly a factor in the use of additional pole space. The Commission's obligation to assure that the citizens of this state receive safe and adequate telephone and electric service must necessarily extend to oversight of the growing use of utility poles for cables, in order that this auxiliary use does not interfere with the primary purpose of utility poles, the provision of electric and telephone service. See Kentucky CATV Assoc. v. Volz, 675 S.W.2d 393 (Ky.Ct.App. 1983); General Telephone Co. of Upstate New York, Inc. v. Public Service Comm'n, 63 A.D.2d 93, 406 N.Y.S.2d 909 (1978). Hence, we conclude that pole attachment agreements are connected with, concern and grow out of the services rendered by Commission-regulated utilities.
Further, when a company uses facilities that are essential to the services provided by a utility, the Commission, under its authority to regulate the rates charged by utilities to their customers for the services that they provide, must ensure that the amount charged for the essential facilities is fair. In the instant case, for example, the Commission must ensure that both cable television operators and utility customers bear reasonable shares of the costs incurred by utilities in constructing, maintaining and owning their pole facilities. See General Telephone Co. of Upstate New York, Inc. v. Public Service Comm'n, supra. We hold, therefore, that under Louisiana law, the Commission has the authority to regulate the rates, terms, and conditions of pole attachment agreements between cable television operators and Commission-regulated public utilities. The court of appeal erred in finding otherwise.
Next, we must determine whether the Commission has the authority to consider and does consider the interests of cable subscribers. La.Const. art. 4, § 21(E) provides in pertinent part:
Appeal may be taken in the manner provided by law by any aggrieved party or intervenor to the district court of the domicile of the commission.... These rights of appeal shall extend to any action by the commission.... [Emphasis added.]
La.R.S. 45:1192 provides in pertinent part:
If any of the persons, mentioned in R.S. 45:1191 [i.e., persons under the commission's jurisdiction or control], or other party in interest, shall be dissatisfied with any order entered by the commission, adopting, fixing, changing, altering or modifying, any rate, classification, rule, charge, or general regulation, the dissatisfied person may ... file in a court at the domicile of the commission, a petition setting forth the particular cause of objection to the order or regulation of the commission complained of. [Emphasis added.]
These provisions create a right of appeal for any party in interest, including those parties not under the Commission's jurisdiction. This right of appeal implies that the Commission must take into account the interests of all the parties before it, whether or not those parties are public utilities. If the Commission deals unfairly with a party, its action, presumably, will be reversed on appeal. Hence, the interests of the cable television subscribers must be considered by the Commission when it is regulating pole attachment agreements. Further, in light of its basic duty to be fair *559 and to protect the general public, it follows that the Commission is under a mandate to assure that the charges for pole attachments are just and reasonable. Fulfilling that mandate necessarily entails balancing the interests of cable television subscribers with the other interests at stake. Such balancing is all that the federal statute can reasonably be read to require. See Cable Television Co. of Illinois v. Illinois Commerce Comm'n, 82 Ill.App.3d 814, 82 Ill. Dec. 199, 403 N.E.2d 287 (1980); Kentucky CATV Assoc. v. Volz, supra. In the Commission's letter to the FCC, the Commission certified that it will consider the interests of the cable television subscribers, as well as the interests of the utility consumers. We have no reason to believe otherwise. In any event, the cable television subscribers' right of appeal assures this result. We conclude that in regulating the rates, terms, and conditions of pole attachment agreements, the Commission has the authority to consider and does consider the interests of the subscribers of cable television services, as well as the interests of the consumers of the utility services.
Finally, we note that the bifurcation of jurisdiction between federal and state governments, which would result if the Commission failed to assert its jurisdiction, would not be efficient or beneficial for the governments or the industries involved. The duplication and overlapping of regulatory function would create an unnecessary burden on the federal government and would unnecessarily limit the proper jurisdiction of the Commission. See Las Cruces TV Cable v. New Mexico Corp. Comm'n, supra. Thus, the Commission properly asserted jurisdiction over cable pole attachments.[8]

DECREE
For the reasons assigned, the judgment of the court of appeal is reversed, and the judgment of the district court is reinstated; the case is remanded to the district court for further proceedings consistent with the views herein expressed and in accordance with law.
DENNIS, J., dissents because the powers at issue here are not necessary to ratemaking and have no real or practical connection with the utilities' service.
LEMMON, J., dissents, concluding that the Public Service Commission has no express or necessarily implied authority to regulate the rates charged by public utilities for the lease of surplus equipment.
NOTES
[*] Judge Charles S. King participated in this case ad hoc in place of Cole, J., recused.
[1] The term "pole attachment" means any attachment by a cable television system to a pole, duct, conduit, or right-of-way owned or controlled by a utility. 47 U.S.C.A. § 224(a)(4) (West Supp.1986).
[2] Louisiana Public Service Commission Orders U-14325 and U-14325 (Amended). These orders, in fact, were issued in response to a conflict among the utilities themselves over joint pole rates and use. The orders specify a formula to calculate rates for joint utilization of poles and facilities by two or more utilities. The utilities apparently began to insist that cable operators comply with that formula. The cable operators have not instituted any proceedings before the Commission to challenge the application of this rate to them.
[3] The Commission's formula and the FCC's formula are identical, except that the Commission's formula requires the attachment to bear the cost of two feet of utility pole; whereas the FCC's formula requires the attachment to bear the cost of only one foot of pole. This figure (the one or two feet) forms the numerator and the total usable space on the pole forms the denominator of a fraction, which represents the percentage of usable space on the pole for which the attachment is responsible. This percentage is then multiplied by other figures to determine the appropriate rate. According to the cable television operators' brief to this court, the application of the Commission's formula has the effect of doubling the rate which would result from the use of FCC's formula.
[4] The cable television operators sought to transfer the appeal directly to the Louisiana Supreme Court pursuant to La.Const. art. 4, § 21(E). The court of appeal denied the transfer, and this court denied their application for supervisory and remedial writs. 460 So.2d 608 (La.1984).
[5] 482 So.2d 715 (La.App. 1st Cir.1985).
[6] 486 So.2d 729 (La.1986).
[7] 47 U.S.C.A. § 224(c) was amended, effective 60 days after October 30, 1984, to add:

(3) For purposes of this subsection, a State shall not be considered to regulate the rates, terms, and conditions for pole attachments
(A) unless the State has issued and made effective rules and regulations implementing the State's regulatory authority over pole attachments; and
(B) with respect to any individual matter, unless the State takes final action on a complaint regarding such matter
(i) within 180 days after the complaint is filed with the State, or
(ii) within the applicable period prescribed for such final action in such rules and regulations of the State, if the prescribed period does not extend beyond 360 days after the filing of such complaint.
Since the effective date of the amendment was subsequent to the hearing on this matter in the district court, the record contains no information relative to whether or not the state has complied with this provision; therefore, we are unable to rule upon same.
[8] We recognize that the federal Eleventh Circuit has declared 47 U.S.C.A. § 224 unconstitutional, and that the United States Supreme Court has noted probable jurisdiction. Florida Power Corp. v. Federal Communications Comm'n, 772 F.2d 1537 (11th Cir.1985), prob. juris. noted, ___ U.S. ___, 106 S.Ct. 2273, 90 L.Ed.2d 716 (1986). The Eleventh Circuit held that an order by the FCC regarding pole attachment rates constituted a taking of private property for which just compensation is due under the Takings Clause of the Fifth Amendment. The court determined that because 47 U.S.C.A. § 224 does not allow for a judicial determination of just compensation, the statute is unconstitutional. The Eleventh Circuit, however, specifically stated that its holding relates to the taking by the federal government and that it expressed no opinion whatsoever as to any issues that might be raised if a state agency charged with the responsibility of regulating the power company as a public utility sought to exercise some control or rate-making procedures concerning attachments to the company's utility poles.