NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

06-1482

DOUGLAS ROBARGE, ET AL.

VERSUS

ENTERGY GULF STATES, INC., ET AL.

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 20013598
HONORABLE HERMAN C. CLAUSE, DISTRICT JUDGE

**********

ELIZABETH A. PICKETT
JUDGE

**********

Court composed of Oswald A. Decuir, Elizabeth A. Pickett, and J. David Painter, Judges.

AFFIRMED.

John Allen Braymer
Attorney at Law
P. O. Box 2431
Baton Rouge, LA 70821
(225) 381-5844
  Counsel for Defendant-Appellee:
  Entergy Corporation
  Entergy Thermal, LLC
  Entergy Technology Holding Co.
  Entergy Technology Co.
  Entergy Power R S Corp.
  Entergy Gulf States, Inc.
  Entergy Enterprises, Inc.
  Entergy Holdings, Inc.
  Entergy Louisiana, Inc.
  Entergy Operations Services, Inc.
  Entergy Power & Light Company
  Entergy Services, Inc.

**Albert David Giraud**
**Ungarino & Eckert**
**3909 Plaza Tower Drive**
**Baton Rouge, LA 70816**
**(225) 292-2000**
  **Counsel for Defendant-Appellant:**
  **Telecable Associates, Inc.**

**Pickett, Judge.**

The defendant, Telecable Associates, Inc., (Cox) appeals a judgment of the trial court finding it liable to a co-defendant, Entergy Gulf States, Inc.

## STATEMENT OF THE CASE

This suit arise from injuries sustained by Douglas Robarge. In its reasons for ruling, the trial court succinctly set forth the facts applicable to this case:

> ROBARGE was an employee of a transport company hired to transport a large piece of oilfield equipment. The equipment, a metal structure, was being transported along Highway 182 in Lafayette Parish. ROBARGE was situated atop the metal structure as it was being moved under utility wires (including ENTERGY and COX wires) hanging across the highway. The ENTERGY line was energized with electricity; the COX line was not.
>
> Both lines were attached to a common anchor pole (telephone company pole) on one side of the road, but traveled to different poles on the other side of the road. The lines therefor hung at different angles over the roadway; the structure being moved encountered the energized ENTERGY line first.
>
> The evidence establishes that at the point of the accident, the structure was passing under the ENTERGY cable with two or three feet of clearance, but the COX line was hanging too low for the equipment to pass. The evidence indicates that ROBARGE was holding the COX line with his leather-gloved right hand in an attempt to help lift the line over the structure as it was moving forward.
>
> The evidence further indicates that the COX line was either "caught" by the moving structure or was being pulled up so tautly that the common anchor pole (also supporting ENTERGY'S cable) was put into a bind. This situation caused the "live" ENTERGY wire to sag, or gallup down, and touch the structure. Electricity then traveled through the metal structure and ROBARGE'S body, exiting through his uninsulated hand to the COX line was holding. ROBARGE was injured by the electrical shock.

Robarge filed suit against Entergy and Cox. After settling with Robarge for $350,000.00, Entergy filed a cross-claim against Cox. The cross-claim alleged that the licensing agreement allowing Cox to install its cables on the poles owned by

2

Entergy required Cox to indemnify Entergy for the damage caused to Robarge. Prior to trial, Cox settled with Robarge. Thus, the only issue before the trial court at the time of trial was Entergy's claim for indemnification. The issue was submitted to the trial court on briefs by agreement of the parties. On July 21, 2005, the trial court issued written Reasons for Ruling finding that Entergy was entitled to indemnification. After taking evidence regarding the amount of attorney fees due, the trial court issued a judgment on January 17, 2006, against Cox in the amount of $429,296.31. Cox appeals that judgment.

## ASSIGNMENTS OF ERROR

The cross-defendant, Cox, asserts four assignments of error:

1.  The trial court erred in finding that equipment from Cox was either directly or indirectly involved in the accident involving Robarge, so as to require Cox to indemnify Entergy for payments made to Robarge by Entergy, and to reimburse Entergy for its attorney fees.

2.  The trial court erred in not interpreting the indemnification provisions in light of the entire Pole Attachment agreement.

3.  The trial court erred in finding that the indemnification defense of active negligence did not apply, so as to eliminate any requirement of indemnification for this claim.

4.  The trial court erred in refusing to find that the indemnification provisions were against public policy.

## DISCUSSION

In its first assignment of error, Cox essentially argues that the contractual provision which provides for indemnification is inapplicable in this case. The contractual provision at issue in this case is Article 19 of the licensing agreement. In it, Cox is referred to as the "Licensee" and Entergy is referred to as the "Company." The article states:

> Licensee agrees to indemnify and hold harmless Company, and

3

any and all agents, directors, officers, employees or servants of Company, from: (a) any and all liability and claims for damages to property, including, but not limited to, damage to property of Licensee, Company or Telephone Company; and (b) any and all liability, claims, payment, damages or loss, including attorneys' fees and expenses, because of, or related to, personal injuries or death, including, but not limited to, injuries or death of third persons, employees of Licensee, Company or Telephone Company: resulting directly or indirectly from the operations of Licensee, or its contractors, or the employees of either, in installing, repairing, maintaining, or removing of Licensee's equipment, or from the existence of Licensee's equipment upon Company's poles or upon the poles of Telephone Company, or from the presence of Licensee, or Licensee's contractor, or the presence of the employees of either, in the vicinity of Company's facilities or equipment wherever located, including, but not limited to, where located on Company's poles and on Telephone Company's poles. In this connection, Licensee hereby acknowledges notice that the wires and other facilities of Company upon and between its poles, as well as Company's wires and other facilities upon and between Telephone Company's poles, at all times contain, and will continue to contain, electric energy; and that it is dangerous to the life of any person for him to contact such wires or other facilities upon or between said poles.

The payments and indemnities in this Section 19 shall apply regardless of whether such liabilities, claims, payments, damages or losses are caused, or contributed to, by the negligence of Licensee, or by the negligence of Licensee's contractors or of its invitees, or by the negligence of the employees of either, and regardless of whether such damages, liabilities, payments or losses are caused, in whole or in part, or contributed to, by the acts or omissions of Company or by the agents, directors, officers, employees or servants of Company, or by Telephone Company, or by the agents, directors, officers, employees or servants of Telephone Company.

Licensee shall carry insurance, in such form, and in companies licensed to do business in the state of Louisiana, satisfactory to Company, with contractual insurance endorsements necessary to protect Licensee and Company and Telephone Company from and against any and all claims, demands, actions, judgments, costs, expenses and liabilities of every kind and nature, which may arise or result, directly or indirectly, from or by reason of such loss, injury or damage, so as to insure the liability of Licensee to Company its agents, directors, officers, employees or servants of company under this Section 19. The amounts of such insurance against liability due to damage to or destruction of property shall be One Hundred Thousand Dollars ($100000.00) as to any one claim and Three Hundred Thousand Dollars ($300,000.00) as to any one occurrence, and against liability due to injury to or death of persons Five Hundred Thousand Dollars ($500,000.00) as to any one

4

person, and One Million Dollars ($1,000,000.00) as to any one occurrence. License shall also carry such insurance as will protect it from all claims under any Workman's Compensation Laws in effect that may be applicable to it. All insurance required shall be procured before any contact is made by Licensee with any of Company's poles, and shall remain in force for the entire life of this agreement. Licensee shall submit to Company certificates by each company insuring Licensee to the effect that such insurance company has insured Licensee for all liabilities of Licensee under this numbered section, including the contractual insurance requirement, and that such insurance carrier will not cancel or change any policy of insurance issued to Licensee except after thirty (30) days' written notice by registered mail to Company; and all such policies shall be replaced by Licensee with similar policies, to be approved by Company, prior to their termination, or effective date of cancellation. Failure of Licensee to so replace any such policy or policies shall constitute a default by it under this agreement, and at Company's election, this agreement may be terminated upon ten days' written notice from Company. Company may, at its election, require that it be named as an additional insured in said policies, or either of them. No policy required hereunder shall exclude liability for injury or damages or death of an employee of Licensee, Company, or Telephone Company, or exclude coverage for damages to property of Company or Telephone Company.

Despite Cox's argument to the contrary, the indemnification contract is clearly applicable in this case. The "existence" of Cox's wire on the poles in this case required Robarge to lift the Cox wire above the equipment being hauled. The trial court found that the act of lifting this wire caused the live Entergy line, which the load had already passed under, to dip and come in contact with the load, which caused Robarge's injury. Had it not been for the existence of the low-lying Cox wire, Robarge would not have been injured. This is a finding of fact pertinent to the interpretation of the contract that cannot be reversed absent a finding of manifest error. *Brafa v. Christ*, 05-270 (La.App. 3 Cir. 11/2/05), 915 So.2d 957. As we find no error in the trial court's finding, this assignment of error lacks merit.

In its second assignment of error, Cox argues that the court failed to interpret the indemnity provision in the context of the entire agreement. Since the agreement

5

concerned primarily the installation, repair, maintenance, and removal of Cox's wires on Entergy's poles, Cox argues that it is beyond the scope of the contract for Cox to indemnify Entergy merely for the existence of Cox's wires on Entergy's poles.

In *McGoldrick v. Lou Ana Foods, Inc.*, 94-400, pp.4-5 (La.App. 3 Cir. 11/2/94), 649 So.2d 455, 458, this court stated:

> When a clause in a contract is clear and unambiguous, the letter of the clause should not be disregarded under the pretext of pursuing its spirit. [*Evangeline Parish School Board v. Energy Contracting Services, Inc.*, 617 So.2d 1259 (La.App. 3d Cir.), *writ denied*, 624 So.2d 1228 (La.1993).] It will not be presumed by the court that parties make use of words in their contracts to which no meaning is attached by them. *Weeks v. T.L. James & Co., Inc.*, [626 So.2d 420 (La.App. 3d Cir.1993), *writ denied*, 630 So.2d 794 (1994).]

We find that the language in article 19 is not ambiguous and clearly provides for indemnification in this case. This assignment of error lacks merit.

In its third assignment of error, Cox argues that indemnification is not available to a party who is "actively negligent." The cases cited by Cox all deal with indemnity in tort, not contractual indemnity. Furthermore, Cox misstates the contents of the agreement in its brief when it says, "the contract in question does not contemplate the active negligence of Entergy[.]" In fact, the second paragraph of article 19 states:

> The payments and indemnities in this Section 19 shall apply . . . .regardless of whether such damages, liabilities, payments or losses are caused, in whole or in part, or contributed to, by the acts or omissions of Company or by the agents, directors, officers, employees or servants of Company[.]

This clause clearly contemplates a situation like the one here where Entergy's own negligence is a factor in causing the damage for which it seeks indemnity. This assignment of error lacks merit.

In its final assignment of error, Cox argues that the indemnification agreement is against public policy insofar as it requires indemnification when the telephone

company, rather than Entergy, owns the poles to which the lines are attached. The problem is, Cox does not say what public policy is offended by this agreement. The trial court did not reach the merits of this issue, finding that only the Public Service Commission, which has authority to regulate the terms of pole attachment agreements, could resolve the issue. The trial court cited *Louisiana Cablevision v. Louisiana Public Service Commission*, 493 So.2d 555 (La.1986). In that case, the supreme court did find that the Public Service Commission had the authority to regulate pole attachment agreements.

Cox has not shown, and we fail to find, that any portion of this agreement is against public policy. This assignment of error lacks merit.

## CONCLUSION

The judgment of the trial court is affirmed in all respects. Costs of this appeal are assessed to Telecable Associates, Inc.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Rule 2-16.3, Uniform Rules, Courts of Appeal.